## MORRISON v. FEDERICO et al.

No. 7512.   Decided June 6, 1951.   (232 P. 2d 374.)

See 41 C. J. S., Husband and wife, sec. 60. Divorce action, attorney's fee as affected by reconciliation of parties to. 17 Am. Jur., Divorce and Separation, sec. 573; 59 A. L. R. 355.

*Leon Fonnesbeck,* Logan, for appellant.

*Marriner M. Morrison,* Logan, for respondent.

LATIMER, Justice.

This is an appeal from a judgment in favor of plaintiff in an action brought by him to recover fees for legal services rendered on behalf of defendant, Jean Hardin Federico. The defendants are husband and wife. The services involved a habeas corpus proceeding instituted against the husband and the paternal grandparents to recover custody of the minor child of the parties; and, services performed in a divorce proceedings started by the husband against the wife. The parties are referred to herein as they appeared in the court below.

On June 4, 1949, after prior arrangement, Jean Hardin Federico went to the office of plaintiff at about 6:30 p. m., where she consulted with him regarding difficulties existing between herself and her husband. She represented to plaintiff that she and her husband lived with his father and mother; that earlier that day she had been evicted from the home by her husband; that he and his parents had refused to permit her to have or care for her child, who was then sixteen months old; that she sought the services of an officer of the law who went with her to get the

child but when a tussle for the child between the grandmother and the mother ensued he turned the child over to the grandmother because of the assertion that the court had awarded custody to the father; and that her husband claimed he had a court order granting him sole custody of the child. A complaint for divorce had been filed by her husband on May 9, 1949, but she had never been served with summons and was unfamiliar with the charges made or the relief requested. She told plaintiff that she had been informed of the divorce action, but thought that it had been withdrawn because no papers had been served upon her and she had been informed by her husband that he was dismissing the action. She said that she wanted to obtain immediate custody of her child because of his age and illness and asked plaintiff to represent her. Accordingly, plaintiff prepared a petition for a writ of habeas corpus, which she signed. After finding that the judge for the First Judicial District was not available, she and plaintiff drove to Ogden that evening, arriving about 10 o'clock p. m. One of the judges of the Second Judicial District Court issued the writ, returnable Monday, June 6, 1949. On Sunday, plaintiff interviewed witnesses and made preparations for the hearing. On Monday, he again drove to Ogden, accompanied by Mrs. Federico and two witnesses who were to appear at the hearing. The husband contested the writ, a hearing was held on the petition, and an order was issued granting Mrs. Federico the custody of the child. She then took the child to Weston, Idaho, where she stayed with her sister-in-law.

Plaintiff had obtained a copy of the divorce complaint filed against Mrs. Federico and went over the allegations with her. She advised him that the charges contained therein were false, requested that he represent her in the divorce action and told him to accept service of the summons for her. On Tuesday, June 7th, plaintiff accepted service of summons in the divorce action, prepared a petition for an order. to show cause for temporary alimony,

support money and attorneys fees, and prepared an affidavit of impecuniosity. On Thursday, June 9, 1949, he took the papers to Weston, Idaho, which is some thirty miles from Logan, Utah for Mrs. Federico's signature. When he arrived, she informed him that she and her husband had decided upon a reconciliation. She stated that her husband had told her he would have the divorce action dismissed and she requested that plaintiff ascertain whether or not that had been done, and, if it were not done by Saturday, to return with the papers and she would sign them. Plaintiff checked with the County Clerk's office and was informed that up until noon the following Saturday no motion for dismissal had been filed. Pursuant to the previous arrangement, plaintiff on Sunday proceeded to Weston and the documents were then signed by Mrs. Federico. Plaintiff assured her that he would again check to see if the divorce action had been dismissed, and if such were the case, he would not file the documents signed by her. On Monday, plaintiff learned that a motion to dismiss the divorce action had been filed, and in accordance with his client's instructions, he did not file the legal papers.

On Monday, June 13, 1949, Mrs. Federico informed plaintiff she would come to his office that morning to sign a stipulation for the release of the writ of habeas corpus, but she failed to appear. Apparently, with the assistance of her husband and his attorney she attempted to bypass her own counselor. During the afternoon of that day plaintiff received a telephone call from the Judge who had issued the writ advising that defendants were in Ogden, accompanied by Frank Federico's attorney, and that the attorney was purporting to represent both parties in having the writ set aside. Subsequently, with plaintiff's approval an order was issued accomplishing the dismissal.

In due course of time, plaintiff requested payment for the services performed by him, and upon defendants' refusal to pay, instituted this action in the City Court of Logan, Utah. A judgment was rendered in his favor and defen-

dants appealed to the District Court. The District Court ruled in plaintiff's favor and this appeal followed.

On this appeal, defendants advance several contentions, most of them without merit. Those of any importance can be resolved by a determination of three issues, namely, whether the cost of the services performed by plaintiff constitutes a family expense within the meaning of Section 40-2-9, U. C. A. 1943; whether a family unit existed at the time the obligation was incurred; and whether the amount awarded was reasonable.

The district court found that all of the services performed were reasonably necessary and payment thereof was charge-.able against both husband and wife for the reason that they were of benefit to the family unit. In his findings he allocated the value of the services in the two suits in the following proportions: $50 for the services in the divorce action, and $250 for the services in the habeas corpus proceedings. For reasons hereinafter discussed, we approve the latter amount as a charge against both defendants, but assess the $50 charge only against the wife.

The general rule on a third party suit against the husband is set forth in 17 Am. Jur., paragraph 573, in the following language:

"If the wife discontinues her suit for divorce, even though she has a valid cause of action, and such discontinuance is without her attorney's consent, the latter cannot recover from her husband on an implied assumpsit for counsel fees incurred by her prior thereto. The attorney must look for his compensation to the wife alone, who of course continues to be liable therefor. This rule is based not only on the fact that counsel fees can generally be awarded only on application in the principal suit, but also upon reasons of public policy. To hold otherwise would be to say that, after an estranged husband and wife have become reconciled to each other and settled all their domestic difficulties, a third party may put the merits of their former family strife in issue and ask a jury to say the wife was entitled to a divorce which was never granted. Such a proceeding is against the policy of the law and ought not to be tolerated."

Under Section 40-3-3, U. C. A. 1943, and previous cases decided by this court, the award of attorneys fees in divorce actions is discretionary with the judge who tries the suit. In most instances, wives are granted some financial assistance to carry on the litigation but this does not always follow. Even when an award is made, the attorney does not acquire a vested interest in the judgment. A fortiori, he could have no interest when the court which has jurisdiction has not ordered the defendant to pay. It might be that the court would refuse to assess attorneys fees against the defendant because of the financial conditions of the parties or for other valid reasons. In this case, we can neither assume that Mrs. Federico would have prevailed nor that she would have obtained a judgment for attorneys fees. This court, in the case of *Openshaw* v. *Openshaw*, 80 Utah 9, 12 P. 2d 364, held that the order must run to the litigants and not to the attorney so that the law contemplates any allowance made to the wife is for her benefit and she is charged with paying her counsel. Any right an attorney might have to participate in a sum awarded could not possibly arise until the award had been made and any relief he might be entitled to would be against his client. Cases reflecting this principle are annotated in 25 A. L. R. 354, and 42 A. L. R. 315. Accordingly, the award of $50 cannot be sustained on the theory that because the court might have made an award in the divorce action the attorney may hold the husband liable in an independent proceeding.

The next question is whether the attorneys fees in a divorce action can be considered as expenses of the family within the meaning of our statute. Section 40-2-9, U. C. A. 1943, provides as follows:

"The expenses of the family and the education of the children are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly and separately."

A divorce action is primarily a controversy between the husband and wife as to who is at fault in causing their domestic difficulties. Rather than being an attempt to promote the family unit, it is an attempt to disrupt it. The action usually involves a determination of property rights between the litigants in which each seeks to prevail over the other. It is an adversary proceeding which involves expense but not such as would be contemplated by the legislature as a family expense. To so interpret the section would permit either the husband or the wife to recover attorney's fees from the other in all cases. The statute quoted above places the liability upon both parties only in those cases where the expenses incurred are necessary for the family benefit. Embraced within its meaning are those expenditures which are proper to support the family and necessary to promote the well-being and best interests of its members. Even though the custody of children might be incidentally involved, that issue does not necessarily transform the action from one for the party's benefit into one which furthers the family's interest. It appears clear that attorney's fees for legal services performed in a contemplated divorce action are not expenses of the family.

The principles which govern our decision on the matter of fees in the divorce action are not present in the award of $250 for the services performed by plaintiff in the habeas corpus proceedings and the trial court's conclusion that the cost of the latter constitutes a family expense within the meaning of Section 40-2-9, U. C. A. 1943, supra, is sustained.

The habeas corpus proceeding directly involved the interest and welfare of the minor child of the parties. The action was not instituted to obtain pecuniary benefits for the mother, to settle domestic grievances between husband and wife, nor to sever the family ties. It was an attempt to benefit and assist the child by returning him to the care of his mother. At the time plaintiff's services were obtained, the grandmother had forcibly prevented the mother from

gaining possession of the infant, and the husband and his parents had placed her in such a situation that it was impossible for her to administer to the wants and needs of the child. At that time, the boy was only sixteen months old, and during the larger portion of his lifetime he had suffered an affliction which necessitated careful and constant treatment. Our law presumes that the natural mother of a child of such tender years can best care for, and attend to, the needs and wants of an infant. Unless it appears to the contrary, his best interest requires the love and attention of his mother, and if it is necessary to institute legal proceedings to make it possible for the infant to have the protective care and attention of a natural mother then the family unit is being benefited. In a sense, the expenses necessary to give a child the care of its mother can be likened to the expense necessary to give it proper medical care. The fact that the father, at the moment, may have assisted other parties in keeping the child from its mother does not take the expenses out from under the provisions of the statute. If it can be reasonably concluded that the legal services were necessary to place the child back with his mother and thus further the interest and welfare of the child it matters not that the father protests. The expenses incurred constitute a family expense within the meaning of the statute when the services substantially benefit the unit and are necessary for its preservation. In this case the services performed accomplished that result.

Defendants further contend that since they were separated at the time the expenses were incurred there was no family unit, and therefore, the expenses cannot be considered within the meaning of Section 40-2-9, U. C. A. 1943, supra. In support of this contention, they cite the case of *Berow* v. *Shields,* 48 Utah 270, 159 P. 538. That case, however, is clearly distinguishable from the case at bar. There, the indebtedness was incurred by the wife after the divorce had been granted to the husband, and there was no question but that the family unit had been permanently dis-

solved. The distinction is clearly demonstrated by the following quotation from that case at page 276, 48 Utah, at page 539 of 159 P.:

"By what we have said, or from the quotations we have just made, we do not mean to hold that the statute would not apply in a case where the husband and wife were merely temporarily living apart and where the family relation had not in fact been severed. That the statute may still apply in such a case is well illustrated by the Sufreme Court of Washington in the case of *Russell* v. *Graumann*, 40 Wash. 667, 82 P. 998, 5 Ann. Cas. 830. In the case at bar, however, the facts are very clear that the family relation had been intentionally and permanently severed at the time the goods in question were purchased by the former wife of the defendant F. A. Shields. Indeed, all the items except the first one were purchased after the husband had obtained a divorce from the wife for her fault. * * * But, by referring to the first item, even that was purchased after the defendants had permanently ceased to live together as husband and wife in the family relation. Be that as it may, however, the evidence shows that that item was fully paid by Mrs. Shields long before this action was commenced."

In the instant case, because of our decision on the matter of the fees for services in the divorce action, we need only consider the question of whether or not a family unit existed at the time the expenses for services in the habeas corpus proceedings were incurred. The husband, on May 9th, had filed an action for divorce. At that time his wife was visiting in California and he had supplied the funds for her journey there. A summons was mailed to California, but was not served upon her because she had returned to Utah. After her return she resumed living with her husband in the home of his parents. They associated and fraternized with each other and the trial court could have concluded that they cohabitated as husband and wife. It may be that one of them was temporarily isolated upstairs or downstairs for short periods of time, but their relationship during this period merely indicates the existence of family bickering and quarreling which had existed during their married life. The time during which the divorce action was being considered was

very short and the marital relationship, if renounced, was soon restored. Though the divorce complaint remained on file, the husband made no effort to have the papers served upon the wife and even though service of summons was later accepted reconciliation was then contemplated. All of the services for which defendants are held to be jointly responsible under the statute were performed prior to the time the wife was served with the divorce complaint. When the wife first consulted with plaintiff on June 4th, she told him she knew about the divorce action, but that her husband had told her he was going to have it dismissed. A few days prior to June 4th, the defendants had considered and had discussed the possible dismissal of the action. Even though trouble again broke out between them, it turned out to be another temporary squabble which was ended by another reconciliation. The conduct of the parties indicates a turbulent relationship, but one which was not completely severed. The evidence clearly establishes that each separation was temporary rather than permanent, and that the family unit was in existence at the time the expenses were incurred. We, therefore, hold against defendants' contention that a family entity did not exist at the time the expenses were incurred.

The last question for consideration is whether the amounts awarded by the court were reasonable for the services performed. Plaintiff acted promptly and properly in his efforts to protect and defend the interests of his client. He prepared the necessary papers at inconvenient times. He appeared before the judge in Ogden, Utah, to obtain the writ and subsequently represented the wife in the contested hearing. He worked on a Sunday to contact the witnesses, to gather up the evidence necessary to properly present the issues and prepared himself to argue the law applicable to the facts, all of which resulted in a favorable decision for his client. He made at least two trips to Weston, Idaho, which is located about 30 miles from Logan, and drove to Ogden and back, a distance

of some 90 miles, on two different occasions to participate in the habeas corpus proceedings. An experienced attorney, who had practiced in the same locality for a number of years, testified as to the amount considered reasonable for attorneys' fees in such instances, and the court's award is well within the limits of his evidence. Defendants did not present evidence to contradict the amount suggested by the witness. The award must, therefore, be affirmed.

The judgment as entered by the trial court against the defendant Jean Hardin Federico is hereby affirmed; and the cause is remanded to the trial court with directions to reduce the judgment rendered against the defendant Frank Federico by the amount of $50, and, as reduced, the judgment against him is to be affirmed. Costs to respondent.

McDONOUGH, J., concurs.

WOLFE, Chief Justice (concurring).

I concur. One may favor a Court of Domestic Relations, which supposedly would be equipped with machinery for investigating the causes of marital derangements and have the power to mediate and reconcile. Many divorces might be prevented if causes of friction were diagnosed in time to prevent them from destroying the relationship. Competent social workers recognize that a sympathetic third party possessing intelligence and tact, who obtains the confidence of both parties, may be able to prevent a shipwreck of the marriage. If labor disputes may yield to mediation, marriage disputes may be capable of reconciliation; therefore, the need of a Court of Domestic Relations with a Department of Advice and Reconciliation as an adjunct. But in matters of domestic relations, the means and instrumentalities used in the process of reconciliation may be equally as important as the concept of reconciliation itself.

I do not think we can turn over to the individual members of the Bar the adjustment of marital difficulties for a fee. The lawyer may be "in his proper function" a "doc-

tor to the heart and the emotions" but lawyers are as varied as doctors. There are eminent doctors to whom no one would refer a matter of strained domestic relations although I venture to say that the old type of family doctor who went into the home knew more about the family life of his patients and their emotional problems and was more often consulted regarding them than the lawyer will ever be and perhaps as much as was the minister and pastor.

The lawyer becomes by training, partisan. I agree that conscientious lawyers will endeavor to adjust marital difficulties rather than fan them into flame. But not every lawyer is so conscientious, and at best he is likely to be partisan; nor is there any assurance that he has the training or disposition to diagnose marital ills.

I have a high opinion of most members of the Bar, but I would not turn them loose promiscuously as "doctors to the heart and emotions" even if fees could not be charged for such services. And I cannot vote for a decision which permits the attorney to sue a spouse (I assume that the wife would also be suable for advice given to the husband if such advice were included as "necessaries") for marital advice rendered under the heading of legal advice on the theory that the cost of obtaining such advice was permissible "expenses of the family" as that phrase is used in Sec. 40-2-9, U. C. A. 1943. Common sense, as I see it, speaks differently. I, therefore, concur in the opinion of Mr. Justice LATIMER.

CROCKETT, Justice (concurring, and dissenting in part).

The prevailing opinion correctly holds with respect to the main issue involved, that the attorney's services in the habeas corpus proceeding were for the benefit and welfare of the child, the mother and the family unit and are, therefore, "family expense" within the meaning of our statute. I am in entire accord with the excellent case Mr. Justice

LATIMER makes to that effect. The whole argument applies with equal cogency to services rendered in connection with the divorce proceeding. I therefore do not agree with the holding vacating that portion of the judgment.

It is true that according to the numerous cases listed in the annotation at 25 A. L. R. 354 (1923) the then numerical weight of authority was according to the holding of the prevailing opinion. There is there listed, however, a considerable number of jurisdictions which hold to the contrary and under certain circumstances permit a recovery by the attorney in an independent action for reasonable and necessary legal services rendered to the wife in connection with a divorce action. They are: Georgia, Iowa, Kansas, Louisiana, Maryland, New York, Texas and West Virginia, and this is also the rule in England. Reference is made to that annotation and a supplement thereto, 42 A. L. R. 315, for a discussion of the various cases indicating that there is some variance both in the statutes of the different states and also in the basis upon which recovery is allowed. Some states allow recovery for attorney's services in defending but not for prosecuting a divorce action on the ground that the one is an attempt to destroy, and the other an attempt to salvage the marriage. As will be observed from the ideas hereinafter expressed, I believe that the reasonable and necessary services should be allowed in connection with any domestic difficulty whether an action is actually filed or not, and if one is filed, no matter who initiates the action, and whatever the ultimate solution may be.

The cases which refuse to allow attorneys to maintain independent actions for attorney's fees for services rendered in connection with domestic strife assign two reasons for such refusal: (1) That the remedy as set up by statute within the divorce action is adequate, and is exclusive, and (2) such services are not "necessaries" and therefore the court has no legal basis for allowing recovery.

It requires but little reflection to see that the remedy within the divorce action is not always adequate. In the first place, the wife may need legal counsel before any action is commenced and the trouble may be ironed out without the filing of a suit. Secondly, even if an action is started, the difficulties may be adjusted before an award of counsel fees is made. In the latter instance, the attorney cannot proceed in the main action independent of his client. Although, so far as we have been able to determine, the question has never been directly passed on in this state, it seems pretty well established that he cannot do so, 17 Am. Jur. 454; *Bell* v. *Bell*, 214 Ala. 573, 108 So. 375, 45 A. L. R. 935, and an annotation listing numerous cases following the latter citation.

According to the cases which permit a recovery in an independent suit, it is permitted only when the main action was never filed or has been dismissed or discontinued so that the attorney would be without any other possibility of recovering for his services. The attorney cannot maintain the independent action during the pendency of the divorce action because the court has jurisdiction to make a necessary award of attorney's fees therein; nor can he maintain the action if a divorce suit has been terminated so that the matter could have been there litigated.

Because of the fact that the remedy within the divorce action is inadequate, it seems to me that it is necessary that there be some other remedy. Otherwise, a wife and children may find themselves in circumstances of intolerable neglect or abuse and without money or credit to procure sorely needed legal assistance. That being so, when the lawyer is unable to get compensation within the principal action, and the wife is unable to pay, the only other possible way for him to be justly compensated is to hold the husband liable on the ground that such services are "necessaries."

The question then is are such services "necessaries," or, to use the phraseology of the Utah statute "expenses of the family"? The cases supporting what has been called the majority view adhere to a somewhat restricted interpretation of the term "necessaries." Many of them refer to the common law rule, as stated in *Sumner* v. *Mohn*, 47 Cal. App. 142, 190 P. 368, that "necessaries" at common law consisted only of food, drink, clothing, washing, physic and a convenient place of residence. See the annotation 25 A. L. R. 354 and West's Digest System, Husband and Wife, Key No. 19 (18) for many such cases. We have held that the Utah statute which makes the spouses liable for "expenses of the family" is broader than the common law term "necessaries" for which the husband was liable, *Berow* v. *Shields*, 48 Utah 270, 159 P. 538. In the case of *Read* v. *Read*, 119 Colo. 278, 202 P. 2d 953, the court held the husband liable for attorney's services in defending his wife on a charge of murdering her child when he was suing her for divorce on the same grounds. The case is not exactly in point, but the court expressed what appeals to me as a very enlightened view of the wife's need for legal services and the right of the attorney is to sue the husband for them. 202 P. 2d at page 957, it stated:

"The term 'necessaries' is incapable of exact definition; its meaning is variable, depending upon the circumstances, financial and otherwise, of the parties."

And also states:

"* * * such necessaries include * * * other articles for the wife's protection in society * * * and such articles and things as are necessary for her sustenance as well as preservation of her health and comfort."

I think this more liberal view as to the necessity of attorney's services is the correct one. It is also reflected in the case of *Gosserand* v. *Monteleone*, 159 La. 316, 105 So. 356, which is reported in connection with the latter annotation in 42 A. L. R. 310. In that case the court bases its decision

on the principle that inasmuch as the law lays down certain specific causes for divorce, and recognizes the right of the wife to institute and prosecute a suit for that purpose, that the right carries with it the privilege of employing counsel and states:

"we find therefore no sound reason in law or morals why the husband should not be required to pay a reasonable fee to the counsel for the services rendered."

For the law to be otherwise would endow the wife with an empty right but afford her no remedy.

Whether attorney's services are "necessaries" or not depends somewhat upon the light in which we view them. I am not in accord with the idea that a

"divorce action is primarily a controversy between the husband and wife as to who is at fault in causing their domestic difficulties."

That may be true in some few instances where the parties are expressing their emotional imbalance by quarreling and bickering and washing their dirty linens in court. But it certainly should not be and actually is not the primary concern of the conscientious lawyer, the court, nor even the adult-minded and emotionally mature litigant. It is my observation that the majority are of this latter class. There is confirmation of this in the fact that lawyers and their clients are able to reach amicable adjustments in most cases of domestic distress. This is so even where divorce is the ultimate answer; more than 90 per cent of the cases are presented by default on an arrangement for the court's approval. In the entire process from the time the client first sees the lawyer, the parties themselves, the lawyers and the courts are not so much concerned with engaging in a contest as to who is at fault, which usually serves only to promote antagonisms and difficulties, as they are in getting some constructive solution thereto; some way to adjust the lives of the spouses and children to best serve

their welfare and happiness. This sometimes involves reconciliation; sometimes divorce.

We regard marriage as a sacred institution, as the foundation of the social structure. It certainly does not strengthen it to lay down a rule that a lawyer into whose hands its fate is entrusted can obtain compensation for his services if a divorce is granted, but if a reconcilation is had, he cannot.

The law and legal services, especially in the field of domestic relations, is inextricably entwined in the warp and woof of life. As we learn more about our human selves and how to deal with our problems, the law is becoming more and more a social science. The lawyer in his proper function is, in a sense, a doctor to the heart and the emotions. In the event of serious family trouble, the counsel of a competent, conscientious well-trained and experienced lawyer may well be the very salvation of a marriage and the family unit. Circumstances can be such that no service is more essential to its well being.

In this case, the husband filed the divorce action, evicted the wife from the home and kept her baby from her. She was without funds. If under such circumstances, she could not pledge her husband's credit, how much closer to "East Lynne" could we get? It is difficult for me to reconcile a ruling that the attorney's services are not "necessaries" with the fact that courts uniformly hold that the services of a doctor, plumber, merchant, and tradesman are "necessaries."

For the reasons stated, I think the lower court properly allowed recovery for attorney's fees rendered in connection with the divorce case and that the entire judgment should be affirmed.

WADE, J., concurs in the opinion of CROCKETT, J.