[Civ. No. 19968. First Dist., Div. One. Aug. 21, 1962.]

SHIRLEY De LIMA, Plaintiff and Respondent, v. WILLIAM S. De LIMA, Defendant and Appellant.

STUART CLARK De LIMA, a Minor, etc., Plaintiff and Respondent, v. WILLIAM S. De LIMA, Defendant and Appellant; SHIRLEY De LIMA, Cross-defendant and Respondent.

(Consolidated Cases.)

*Assigned by Chairman of Judicial Council.

Daniel Kass for Defendant and Appellant.

Severson, Zang, Werson, Berke & Larson and Kurt W. Melchior for Respondents.

BRAY, P. J.—Defendant, William S. de Lima, appeals from those portions of a judgment providing that the proceeds of certain insurance policies be paid to the estate of Stuart Clark de Lima, a minor, denying his cross-complaint, and requiring defendant to pay plaintiff's counsel $500 attorney's fees.

### QUESTIONS PRESENTED

1. Did the court err in declaring the order of the Nevada court based on the original divorce decree res judicata as to the disposition of the proceeds of the policies and in refusing to award the proceeds to defendant?

2. Did the court modify that order?

3. Was the award of attorney's fees to plaintiff's attorney proper?

### RECORD

Plaintiff Shirley de Lima (hereinafter referred to as "wife") filed a complaint for declaratory relief (action No. 484968) against William S. de Lima (hereinafter referred to as "husband") seeking a declaration that the husband be

required to continue to pay her $150 per month alimony pursuant to the decree of the District Court of the State of Nevada in a divorce action between these parties, and that it be declared that she is entitled to half of the proceeds of the insurance policies hereafter described. The husband answered, denying the merits of the complaint. Thereafter an action, No. 485118, was filed by the wife as guardian of the estate of the son of the parties, Stuart Clark de Lima, a minor. (Stuart will hereinafter be referred to as ''son.'') The first amended complaint alleged that the son is 15 years of age; that eight certain described policies of insurance on the son's life had matured or were about to mature; that an order of the Nevada court provided that under an agreement between husband and wife, upon the son's reaching high school age, the proceeds from said eight ''policies shall inure to the benefit of said child and shall be used for the support and education of the child'' unless he shall be expelled from school because of his scholastic standing, in which event the husband shall no longer be obligated to apply their proceeds to this maintenance and cost of education; that the husband was claiming the right to the proceeds of said policies on maturity and prayed that all interests of the husband in said policies be vested in the son and paid to his estate.

The husband cross-complained stating that in the written agreement of the parties mentioned in the Nevada decree, it was the intent of the parties that the policies were to benefit the son only if he did not have any other estate or income, as on the date of the agreement the son had no assets, and if the son did not need the proceeds they would be released for the sole benefit of the husband. Subsequently, however, the son has become the sole heir to the corpus of a testamentary trust set up by the husband's mother, the value of which is $315,059.12, and from which the son receives an annual income exceeding $7,000. The husband further alleged that cross-defendant wife had refused to release said policies to him and sought damages against her in the sum of $18,000 and that she be directed to release to him all said policies.

The two actions were consolidated.

The court found that the husband's earning power had suffered a substantial decrease, and that the husband was warranted, therefore, in reducing the alimony payments to the wife to the sum of $40 per month; that the wife personally has no interest in the insurance policies; that the order of the

Nevada court with reference to the insurance policies is res judicata; that the son is properly in school, and that upon maturity the proceeds of the policies should be paid to the son's estate. The judgment proceeded accordingly. The wife appealed from the portions of the judgment adverse to her, and then abandoned the appeal because her demands created a conflict with Stuart's interests. The husband's appeal is from the ruling that he has no interest in said policies and that the proceeds thereof must be paid to the minor's estate and from the award of attorney's fees.

### HISTORY OF THE LITIGATION

To understand the situation and the findings of the court it is necessary to review the history of the litigation between the parties.

On November 5, 1951, the wife obtained in Nevada a divorce from the husband. A property settlement entered into by them was incorporated in the divorce decree. The husband was to pay $150 per month for their son Stuart's support, and $150 per month alimony. During their marriage the parties had purchased with community funds eight Massachusetts Mutual Life Insurance Company policies on the son's life with short maturities. They were to mature seriatim yearly from the time the son would reach high school age through his college years. The first matured in 1959, the last will mature in 1964. Because of the dispute between the parties the insurance company has retained all proceeds.

The Nevada decree provided, in pertinent part: "Upon said child, STUART CLARK DE LIMA, reaching high school age, then and in that event, *said sum* [the $150 per month support the husband agrred to pay for the son's support] *shall cease and terminate and in lieu thereof,* husband covenants and agrees that the proceeds from eight" policies above mentioned "shall inure to the benefit of said child and shall be used for the support and education of the child on the conditions hereinafter mentioned. Husband covenants and agrees that during the life of this agreement, he will at no time change the beneficiary or beneficiaries under said policies and that said sums will be made available to the child for his support, maintenance and cost of education upon reaching high school age. In the event of husband's remarriage prior to STUART CLARK DE LIMA's completion of his education or his discontinuance of education, husband shall relinquish all control over said eight endowment policies. *Provided, however, husband,*

*in his sole discretion can* select and determine the schools that the said STUART CLARK DE LIMA shall attend, and further said child shall maintain grades which according to the rules and regulations of the educational institution would permit him to remain a student therein. In the event STUART CLARK DE LIMA should be expelled from said school because of his scholastic standing, then and in that event, husband shall no longer be obligated to apply the proceeds of the above insurance policies to this maintenance and cost of education. *Provided, however, that in the event of his expulsion from said school, then husband covenants and agrees to support said child in accordance with the aforementioned provisions herein until said child reaches the age of majority."* (Portions deleted by the 1958 decree hereafter discussed are in italics.)

Stuart's grandmother died in 1956. Her estate prior to taxes and expenses was appraised at $407,703.97. Stuart receives 40 per cent of the income of the estate until he is 30 years old, at which time he receives 40 per cent of the corpus. On the death of his father and an aunt he will receive the rest of the corpus. The wife was appointed in New York State guardian of Stuart's estate. Between January 1957, and June 1960, the guardianship received from the grandmother's estate $20,969.62, plus $109.30 interest. All but $1,987 had been spent, and there were outstanding bills.

In 1957 the husband brought an action in Nevada to modify the decree. He asked to be relieved of the monthly support payments to Stuart and the obligation of applying the insurance proceeds toward Stuart's education, on the ground that because of his inheritance, Stuart did not need anything further. The Nevada court in 1958 relieved the husband of the making of the support payments. It made no change in the requirement that the insurance proceeds should inure to Stuart's benefit on his reaching high school age. It left that portion of the 1951 decree intact. It changed the provision giving the husband the sole right to determine the schools that Stuart should attend by providing that the husband and wife should jointly make the selection, with a provision for arbitration or reference to the court as to such selection if the parties could not agree. The court eliminated the provision that if Stuart should be expelled from school, the husband would have to support him until majority. (See italicized portion of the order hereinbefore set forth.)

As the husband refused to instruct the insurance company to pay the policy proceeds to Stuart's estate, the wife as

guardian of Stuart brought this action against the husband joining the insurance company as a defendant.

The evidence shows that Stuart is in school, apparently doing well there, and intends to continue his education through college. The court found that in compliance with the Nevada order Stuart is ''properly in school.''

1. *Res Judicata and the Denial of Defendant's Cross-Complaint.*

The court found that the 1958 order of the Nevada court is res judicata as to the insurance policies, and, contrary to the allegations of defendant's cross-complaint, that defendant has no interest in the insurance policies.

The statement that the Nevada order is res judicata is not strictly a correct statement. ▮▮▮ The matter of the custody, education and support of minors is within the continuing jurisdiction of the trial court. (*Adams* v. *Adams* (1934) 2 Cal.App.2d 173, 178 [37 P.2d 729] ; *Carter* v. *Carter* (1957) 148 Cal.App.2d 845, 849-850 [307 P.2d 630].)[1] ▮▮ However, that fact does not make the determination of the trial court here erroneous, for the reason that although the determination of such matters by one court does not make that determination res judicata as to a subsequent determination by another court, the courts have held that there is no abuse of discretion where the trial court has refused to disregard the first court's determination where, as here, there has been no change of circumstances between the making of the first order and the application for a second. (See *Frizzell* v. *Frizzell* (1958) 158 Cal.App.2d 652, 655 [323 P.2d 188].) ▮▮ A trial court has the right to require that there must be different circumstances than those already passed upon by the court making the order desired to be changed. (See *Stack* v. *Stack* (1961) 189 Cal.App.2d 357, 369 [11 Cal.Rptr. 177].) ▮▮ The discretion which section 139 of the Civil Code grants to the courts to modify or revoke child support payments is not abused in a situation where denial of modification is based on the fact that there has been no change of circumstances since the making of the original order.

This case is a good example of the reason for not changing an order of this kind without proof of a change of circumstances from those existing at the time of the court's last order.

---

[1] In both cases there was a change of circumstances between the making of the first order and the application for a modification.

From the evidence and findings as a whole in our case it is obvious that the sense in which the trial court felt that the 1958 Nevada order was res judicata of the matter was that the facts were unchanged since the rendering of that order. ▮ The evidence shows without conflict that there has been no such change. Hence, if necessary, this court could make a finding to the effect that there has been no change of circumstances, and no reason for a change of the order.

The Nevada court had before it the fact that Stuart had a 40 per cent interest in his grandmother's estate from which he would receive some $7,000 annually. Before the trial court the value of the interest which Stuart would receive at age 30 was more carefully delineated. However, all the terms were available at the time of the Nevada hearing. ▮ Moreover, it is the income Stuart presently receives which is important now, not his expectancies at age 30. The opinion of the Nevada court shows that it considered the inheritance in the light of the actual income received, which income has not changed.

Defendant contends that as the wife's testimony was given by deposition at the Nevada hearing he had no opportunity to cross-examine her at that time "except by deposition." Why such cross-examination was not sufficient does not appear. Moreover, defendant fails to show any information that he could have obtained from her that would have changed the ruling of the Nevada court or that of the court below. Defendant did cross-examine her on the trial here.

Defendant states that the trial court did not require an accounting of the guardianship estate from its beginning prior to the Nevada order of 1958 to date. At that hearing the court spoke of a "commendable surplus." At the trial below it appeared that there was only a small surplus in the hands of the guardian. Defendant's contention that the proceeds of the insurance policies were only to be used in case of "need" was rejected by the Nevada court at the time it made its 1958 order.

It might be pointed out that the opinion in the Nevada case expressed the view that the provision for the insurance proceeds might be considered as nonmodifiable. The judge in his opinion stated: "To me it seems to be more a part of the property settlement agreement itself, and that plaintiff would not have entered into the agreement if such a provision could or would be modified at some future date." See *Van Dyke* v. *Van Dyke* (1954) 126 Cal.App.2d 238 [271 P.2d 910], quoting

with approval from *Streeter* v. *Streeter* (1944) 67 Cal.App.2d 138, 144 [153 P.2d 441] : " '. . . a decree based upon an unqualified property settlement, made a part of the order of the court, directing payments in installments for an unlimited period may not be modified except in a particular affecting a child's welfare. The amount to be paid may be increased but not reduced.' " (P. 244.) Stuart is entitled to the best education and support that the joint income from his inheritance and the proceeds of the insurance policies will give him.

### 2. *Did the Court Modify the Nevada Order?*

Defendant contends that ordering the insurance proceeds to be paid to Stuart's guardian without limitation as to its use constituted a modification of the Nevada order. There can be no question but that the trial court's judgment insofar as it dealt with proceeds of the policies, matured to the date of the order, is identical with, and in no way modifies, the Nevada order. It is as to the few policies to mature between the date of the judgment, January 19, 1961, and 1964, that defendant contends the Nevada order is changed by the trial court, in now ordering those policies to be paid as they mature directly to Stuart's guardian, rather than through the father. However, such order in nowise conflicts with the Nevada order. That order clearly states that the proceeds are for Stuart's support, maintenance and cost of education. The conditions on which Stuart is to receive the money are laid out in the provision that he must stay in school, maintain satisfactory academic standards, etc. The Nevada order says the proceeds "inure" to him and that said sums will be made available. The effect of the Nevada order is the same as the California order; the proceeds are to be paid to Stuart as the policies mature; so that whether they be paid to Stuart's guardian directly by the insurance company or first to the father and by him to the guardian makes no material difference.

Defendant asks what happens if Stuart should be expelled from school? The situation in that event would be no different from what it would be under the Nevada order. Defendant would show that the circumstances had changed and that under either order Stuart is no longer entitled to the maturing insurance proceeds. Defendant for the second time has repudiated his obligation under the original divorce decree. It therefore was necessary for the court to order the decree to be enforced, namely, that the matured insurance proceeds and the other proceeds as they mature be paid to

Stuart. Defendant's refusal to fulfill his obligation required the court to see that the obligation is carried out even though it meant ordering the payment of the proceeds directly to Stuart's estate, thereby bypassing the husband. (See *Beeler* v. *Beeler* (1961) 193 Cal.App.2d 548 [14 Cal.Rptr. 460].)

### 3. *Attorney's Fees.*

The findings found that the "attorney for Shirley de Lima" is entitled to $500 additional attorney's fees. The judgment provided that such sum be paid "to counsel for Shirley De Lima." Defendant contends that it is not clear whether the court intended that these fees be for services rendered Shirley in her individual action, or for those rendered to her as guardian. The only reasonable interpretation of the court's language is that the fees related to her individual action, first, because were they for the guardianship the findings and judgment would have so stated, and secondly, they are characterized as "additional attorneys fees." The wife had previously received attorney's fees in this proceeding. The record discloses no mention of attorney's fees having previously been paid herein for services to Stuart's estate.

The husband contends that there is no evidence showing the wife's need for attorney's fees, that the court made no finding that there was such need, and that the court refused to sign findings offered by the wife which included a finding to the effect that the wife had not and the husband had, means to pay attorney's fees for the wife individually and as guardian.

In a proceeding to enforce alimony payments after final judgment of divorce the court has discretion under section 137.3, Civil Code, to allow attorney's fees. (*Wilson* v. *Wilson* (1948) 33 Cal.2d 107 [199 P.2d 671].) However, the wife in such a proceeding must establish necessity for them. "They are not a matter of absolute right and may be awarded only upon a finding of necessity." (*Kalmus* v. *Kalmus* (1951) 103 Cal.App.2d 405, 422 [230 P.2d 57].)

The evidence shows that the wife had an independent income, but no savings and was in increasing debt at the time of trial. A reasonable interpretation of the court's finding that her attorney "is entitled" to the sum awarded is that the court found the necessity therefor. In any event, as stated in *Crook* v. *Crook* (1960) 184 Cal.App.2d 745, 748 [7 Cal. Rptr. 892], "The findings of the trial court do not indicate the wife had the ability to pay her attorney's fees and costs on appeal as is claimed by the husband." Therefore the refusal of the court to make the requested finding is not suffi-

cient to overcome the fact that the court did not make a positive finding that the wife had the ability to pay her attorney's fees.

The judgment is affirmed.

Sullivan, J., and Devine, J.,* concurred.

A petition for a rehearing was denied September 13, 1962, and appellant's petition for a hearing by the Supreme Court was denied October 17, 1962.

*Assigned by Chairman of Judicial Council.