437 P.2d 453

Ross J. DAVIS and Mary Davis, his wife,
Plaintiffs and Appellants,

v.

Glen K. RILEY and Mrs. Glen K. Riley, his
wife, Leon Riley and Mrs. Leon Riley, his
wife, and Mrs. Lois Riley, Defendants and
Respondents.

No. 10827.

Supreme Court of Utah.

Feb. 2, 1968.

James L. Barker, Jr., of Barker & Ryberg,
Salt Lake City, for appellants.

Lynn G. Foster, Salt Lake City, for re-
spondents.

CROCKETT, Chief Justice:

Plaintiffs Davis sued defendants Riley to
quiet title to a narrow strip of land between
their homes at about 590 South on First East
Street in Bountiful. The Davises base their
claim on a recent (1966) survey according to
the recorded deeds; while the Rileys rely on
an established physical boundary, which
traces its existence on the property back for
over 45 years. The trial court granted
summary judgment for the defendants Riley.
The plaintiffs Davis appeal, contending that
the summary judgment should be reversed
and judgment granted for them, or in the
alternative, that there must be a trial on
disputed issues.

Both properties were part of a tract of
land owned by the plaintiff's grandfather,

Daniel K. Davis. While he still owned it he built a fence running from the street (First East) westward along the line which the Rileys now claim as the boundary. It was sometime after this fence had been constructed that, in the year 1920, Grandfather Davis sold and deeded the land on the south to the Rileys' predecessor, Leonidas Riley. The respective properties have passed through mesne conveyances, the detail of which is not important, in the same families down to the present owners. The original need for the fence and the fence itself have long since vanished. But through its remnant posts and other evidence it is shown that it ran on a line parallel to and a few feet (varies from 4.5 feet on the east end to 5.2 feet on the west end) north of the survey boundary line as specified in the deeds.

In addition to their reliance on the record title to the disputed strip, the Davises contend that the fence line, the few feet north of the record boundary, was built by their grandfather merely as a barrier to keep his cows out of his garden and orchard. They argue that it is neither a fact, nor is there any proof that it has ever been regarded as a boundary line; that until this trouble developed the parties have always been friendly; that they have never been concerned with the boundary line between them; and that such use as the Rileys have made of the few feet north of the true boundary has been a friendly and permissive use. As opposed to this, the Rileys contend that they are entitled to the ruling as a matter of law that the fence line is an established Boundary by acquiescence,[1] based upon the following facts which they aver are shown without dispute: that since the original conveyance in 1920 they have made exclusive use of the property up to the fence line. In 1924 they erected a garage which extended about 2½ feet north of the survey boundary; and in the same year established a driveway about half of which is this disputed strip north of the survey line. In 1934 they planted some trees along the old fence line. In 1951 they constructed a retaining wall along the north edge of the driveway, being about 4½ feet north of the survey line. During all of that time they have maintained exclusive use and control of this garage and driveway and thus of the disputed strip of property.

At a hearing on a motion for summary judgment the trial court indicated that certain evidence relied on by the plaintiffs as to conversations between the parties' respective predecessors, Daniel K. Davis and

1. As to the requisites to the establishment of boundary by acquiescence, see Fuoco v. Williams, 18 Utah 2d 282, 421 P.2d 944; Fuoco v. Williams, 15 Utah 2d 156, 389 P.2d 143; King v. Fronk, 14 Utah 2d 135, 378 P.2d 893; Brown v. Milliner, 120 Utah 16, 232 P.2d 202; Tripp v. Bagley, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417.

Leonidas Riley, which evidence was purposed to show permissiveness of the use by the Rileys, was inadmissible because of the dead man's statute,[2] and that he would rule for the defendants. Before judgment was entered, the plaintiffs filed an affidavit of plaintiff's brother, Kelly Davis, that he had heard the original grantor and grantee, Daniel Murray Davis and Leonidas G. Riley, discussing "the use by Mr. Riley of part of my father's land. * * * that the driveway used by the Rileys was not wide enough. * * * I recall hearing my father tell Mr. Riley that he could go ahead and use part of my father's land for this driveway." Based thereon, plaintiffs made a motion that the court reconsider its ruling.

Upon a further hearing of the motion for summary judgment the trial court made this comment about the affidavit of Kelly Davis:

> There is no question in my mind that had this [affidavit] been presented at the hearing, *the summary judgment would have been denied* on the basis of what Kelly Davis presented * * * It would have raised that question of fact, but coming late as it does * * * does not present a sufficiently strong position to justify the reopening of the question once submitted. (Emphasis added.)

We agree that this affidavit appears to raise an issue of fact as to whether the Rileys' use of part of the Davis property was merely permissive; and that if this were proved, that would preclude the establishment of a boundary by acquiescence.[3] Accordingly, the affidavit puts in dispute an issue which it is necessary to resolve by trial in order to settle the controversy between these parties. But our apprehensions are about the correctness of his ruling that the lateness of filing the affidavit precludes the granting of a trial as requested by plaintiffs.

 We appreciate that when a case has once been submitted to the court whether he will allow the presentation of further evidence is ordinarily a matter of discretion. However, even though where an action is discretionary there is necessarily indulged considerable latitude of judgment, this does not mean unrestrained power to act in a capricious or arbitrary manner which may produce an inequitable or unjust result. The word "discretion" itself imports that the action should be taken with reason and in good conscience, and with an understanding of and consideration for the rights of the parties, for the purpose of serving the always desired objective of doing justice between them.

There are other considerations present in this case which suggest that the ends of justice will best be served by the trial court

2. See 78–24–2 U.C.A.1953.

3. That this contention if proved would defeat a claim of title by acquiescence see the cases cited in footnote 1 above.

considering the supplementary affidavit, which will require the next logical step, the granting of a trial. Although the trial judge had previously announced what his decision would be, no formal judgment had actually been entered before the plaintiffs filed the supplementary affidavit. Therefore, giving it consideration would involve no serious procedural difficulty or inconvenience. Finally, the court had at the first hearing rejected evidence of similar import from another source, so there is at least some degree of excuse for the plaintiffs belatedly filing the other affidavit in support of that phase of their evidence.

It appearing that there is dispute on issues of fact which must be resolved upon a trial in order to correctly determine the boundary line between the properties of the plaintiffs and the defendants, the order granting summary judgment is vacated and the case is remanded for trial. The parties to bear their own costs on appeal.

TUCKETT and ELLETT, JJ., concur.

CALLISTER, Justice (concurring in result).

I concur in the result with the majority opinion that the summary judgment should be reversed and the case remanded for trial. However, from the facts presented, it appears that the doctrine of boundary by acquiescence is not applicable.

This doctrine is premised on either an express parol agreement by adjoining owners fixing the boundary or the court will imply such an agreement by indulging "in a fiction that at some time in the past the adjoining owners were in dispute or uncertain as to the location of the true boundary and that they settled their differences by agreeing upon the fence or other monument as the dividing line between their properties." [1]

This doctrine cannot be invoked, if from the evidence there is nothing to imply that the fence was built pursuant to an agreement between adjoining owners, such as, the person building the fence intended to build it upon his own land and hence did not consult his neighbor.

In the Ringwood case at page 123 of the Utah Report, at page 1055 of 269 P.2d, this court cited 3 Utah Law Review at page 514 and its analysis of Boundary by Acquiescence and quoted its conclusion that the presumption of an implied agreement may be rebutted by " ' * * * (1) proof there actually was no agreement by the parties or (2) *by proof that there could not have been a proper agreement.* Factors showing the latter include the following: (a) no dispute or uncertainty over boundary, (b) line not intended as a boundary, (c) *no parties available to make an agreement* and (d) possibly mistake or inadvertence in locating the boundary line.' " (Emphasis added.)

1. Ringwood v. Bradford, 2 Utah 2d 119, 122, 269 P.2d 1053 (1954).

In the Ringwood case, this court concluded with the admonition:

" \* \* \* To hold that the defendant's belief, reliance, and occupation up to the fence line, without more, are controlling in a boundary dispute would be to ignore the statutory guides for adverse possession since she did not pay taxes on that portion of land which she claims."

In the instant action, there are facts that indicate the common grantor of the parties constructed the fence while he still owned the entire parcel and that he subsequently conveyed defendants' portion to their predecessor in interest. Under these circumstances the only possible inference is that the person building the fence intended to build it upon his own land, since there were no parties available to make an agreement settling the boundary. The doctrine of boundary by acquiescence cannot be utilized as a subterfuge to avoid compliance with the statutory provisions for adverse possession.

HENRIOD, Justice (concurring in result).

I concur in the result arrived at by the main opinion. Also with some of the observations of Mr. Justice CALLISTER, re: the requirements of establishing boundaries by acquiescence. But don't fence me in.