**Beverly KERR, Plaintiff and Respondent,**

v.

**Thomas Alden KERR, Defendant and Appellant.**

No. 16495.

Supreme Court of Utah.

April 29, 1980.

---

**25.** See 71 Am.Jur.2d, Specific Performance, Sec. 137, p. 177.

J. Franklin Allred and Richard G. Mac-Dougall, Salt Lake City, for defendant and appellant.

Robert S. Campbell, Jr. and Glen E. Davies of Watkiss & Campbell, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

The trial court awarded each of the parties a decree of divorce. Defendant appeals from that portion of the decree which provides for the division of the marital property and the payment of property taxes, expert witness' fees and attorneys' fees.

The parties were married on November 22, 1946, and lived together as husband and wife for nearly 31 years until their separation on August 18, 1977. They have three children, two of whom have attained their majority and a son, Stephen, who at the time of trial was 15 years of age and whose custody was awarded to the plaintiff. From the time of their marriage until the summer of 1957, when their first child was born, the plaintiff worked and provided substantial financial support to the marriage. Defendant attended dental school during this time and graduated in 1955. Following his graduation, he established his own practice of dentistry which in 1977 produced a net income before taxes of $42,-542 which included a deduction for tax purposes of $4,235.77 for depreciation. Plaintiff had not been gainfully employed outside the home since the birth of their first child in 1957 but had kept and maintained the home of the parties and cared for the three children. Plaintiff had been given by her father certain separate property and investments which in 1978 produced a total income of $3,829.

The defendant contends that the division of property made by the lower court was inequitable to the defendant both in the proportion awarded to him and also in the type of property allocated to him. He complains that the plaintiff was awarded full ownership of the house and lot which was fully paid for and which was appraised at $182,000 to $186,000 together with the household furniture and furnishings which he estimated to have a value of an additional $50,000, while he was awarded certain unsecured notes and contracts which the parties had purchased as investments with AFCO Development Corporation and which the president of AFCO testified were speculative in nature.

■ The division and distribution of marital property between parties to a divorce action is a matter wherein the trial court has been invested with broad discretion.

An order bearing thereon will not be disturbed absent a clear abuse of such discretion.[1]

■ The division of property made by the trial judge falls within his ambit of discretion. According to defendant's own valuation placed upon the assets, the total value ·of the property distributed to him was $176,691.97 if the AFCO notes and contracts are valued at cost. Defendant produced no evidence as to the value of the notes and contracts while plaintiff produced testimony that the company was solvent and would be able to meet payments on the notes and obligations as they fell due. The president of that corporation testified that the corporation would be able to meet its obligations and that at the request of the defendant, payment on one of the notes had been deferred for one year. Against the property awarded to the defendant were obligations in the amount of $50,400 leaving him a total net distribution of $126,291.97. The portion of the marital assets distributed to the plaintiff total $247,325 according to defendant's valuations. Thus, according to defendant's figures, plaintiff received approximately two-thirds of the marital assets and defendant received one-third.

If the valuations presented by the plaintiff are used, then defendant received assets with a net value of $200,774.45 as against $240,950 for her which is approximately 55 percent to plaintiff and 45 percent to defendant.

The trial court had before it testimony that plaintiff had not been gainfully employed outside the home for nearly 22 years and that her skills were in clerical and sales work. On the other hand, the defendant had a well-established profession netting him in excess of $40,000 per year. The fact that, due to her willingness to work while he attended school, plaintiff has not increased her earning capacity to the same

1. U.C.A., 1953, 30-3-5; see also English v. English, Utah, 565 P.2d 409 (1977); Naylor v. Naylor, Utah, 563 P.2d 184 (1977).

extent as had defendant, speaks in favor of the trial court's distribution.[2]

Furthermore, it was undisputed that plaintiff contributed $10,000 from her own separate funds to completely furnish the first home of the parties and when that home was sold and their current home was purchased, many of those furnishings were moved to and are still in the new residence. Plaintiff contributed another $5,000 of her own funds in 1967 to retire the mortgage on this residence. In view of these undisputed facts the trial court did not abuse its discretion in awarding a greater portion of the marital property to the plaintiff than to the defendant.

■ It is true that the real estate awarded to the plaintiff and the furniture were of a more solid value than the unsecured notes and mortgages awarded to the defendant. However, these investments, unlike the house and lot, are interest bearing and defendant presented no evidence as to their value other than that they were "speculative." The fact that the defendant, however, voluntarily waived one of the annual payments on one of the contracts would indicate that he did not seriously question the solvency of AFCO or doubt its ability to pay its obligations. We certainly cannot say as a matter of law that the defendant will not eventually recover his entire investment and there appears a good possibility that he will reap a handsome return. Defendant had purchased the AFCO investments at his own instance and the plaintiff, while apparently not objecting, did not have much involvement in their purchase. For these reasons, we believe the trial court did not abuse its discretion in awarding the entire house and lot to the plaintiff and the entire AFCO investments to the defendant instead of splitting them between the parties in some fashion.

■ Defendant next complains of the requirement in the decree of divorce that he pay one-half of the property taxes on the residence for the year 1978 while this case was pending trial. In early 1978 the plaintiff had petitioned the lower court to award her temporary alimony and support money, estimating her monthly expenses to be $1,617 which included an allocation for property taxes in the amount of $100. The lower court awarded her $1,375 per month temporary alimony and support and ordered that she satisfy and discharge the obligations listed in her affidavit out of that award. The first payment to her commenced with the month of March 1978. The total property taxes on the residence for the year 1978 were $1,675.30.

We hold that there was no error in this regard. Even had plaintiff been charged with $100 per month for the payment of the taxes, she received temporary alimony and support money only for ten months, or a total of $1,000. This would still leave $675.30 remaining unpaid. Furthermore, defendant obtained a modification of the temporary award on August 14, 1978, reducing it by $100 per month. These were both temporary orders and the trial judge clearly had authority to modify them in making his final determination.

■ Defendant next complains of the requirement that he pay $450 per month for the support of his 15 year old son Stephen as long as he continues to reside with the plaintiff and is attending college full time or serving a mission for his church. This objection is well taken. U.C.A., 1953, 15–2–1 as amended, provides that minors attain their majority at age 18 unless sooner married but that courts in divorce actions may order support to age 21. The decree here did not limit the support to age 21 and more seriously was not based upon any finding of circumstances which would justify the order compelling the defendant to support his son beyond the age of 18. We held in *Carlson v. Carlson*,[3] that in the absence of such a finding an order of support for a child over 18 cannot stand. We appreciate that since Stephen's 18th birthday was at the time of trial more than

---

2. See *Tremayne v. Tremayne*, 116 Utah 483, 211 P.2d 452 (1949).

3. Utah, 584 P.2d 864 (1978).

three years in the future, the court could not know and therefore could not find what his specific needs would be at age 18. We therefore modify the decree to provide for the payment of child support until his 18th birthday at which time if support is still needed, the plaintiff may petition for a continuation of support based upon circumstances existing at that time.

Defendant's final argument on appeal challenges the award of expert witness' fees, and attorneys' fees. Defendant suggests that these were improper in that (1) evidence thereon was introduced after plaintiff had ostensibly rested her case, and (2) the amounts awarded were excessive.

█ It is within the discretion of the trial court to permit a party to reopen its case following submission to the court, and such action is not grounds for reversal in the absence of some prejudice demonstrable by the opposing party.[4] As no explanation was offered by defendant regarding the injury which was occasioned by the court's decision to hear testimony regarding witness' and attorneys' fees, we are unable to agree that reversible error occurred thereby.

█ We are inclined to agree, however, that the award of $1,250 in witness' fees was excessive. This Court has recently held, in the decision in *Frampton v. Wilson*,[5] that expert witness' fees may not be taxed as costs over and above the statutory rate.[6] We therefore remand to the trial court for an adjustment of the award.

█ We remand also for a reconsideration by the trial court of the amount awarded as attorneys' fees in the present action. Pursuant to statute,[7] a court in a divorce proceeding is empowered to award such sums as will permit the opposing party to bring or defend the action. The decision to make such an award, together with the amount thereof, rests primarily with the sound discretion of the trial court.[8] As with the award of alimony, however, an award of attorneys' fees must rest on a basis of evidence of need[9] and reasonableness.[10]

█ In the instant case, counsel for plaintiff took the stand and set forth the number of hours dedicated by himself and an associate to the case, the hourly rate charged by each ($90 for the attorney himself, $50 for his associate), together with a rough tally of expenses incurred during the action. On the basis of this calculation, the attorney asserted a fee of $10,628. The trial court, without making a finding of fact thereon, refused this figure, but awarded $8,500 in attorneys' fees.

At no point in the proceedings was any evidence addressed to whether or not plaintiff would be unable to cover the costs of litigation; indeed, no suggestion was made by her that she would not be in a better position than defendant, in light of the substantial property settlement,[11] to furnish counsel with compensation.

Neither does the evidence reflect any attempt to characterize the requested award as reasonable. Testimony regarding the necessity of the number of hours dedicated, the reasonableness of the rate charged in light of the difficulty of the case and the

---

4. *Davis v. Riley*, 20 Utah 2d 325, 437 P.2d 453 (1968).

5. Utah, 605 P.2d 771 (1980).

6. U.C.A., 1953, 21–5–4 provides for payment of witnesses in the amount of $14 per day plus mileage.

7. U.C.A., 1953, 30–3–3.

8. *Adams v. Adams*, Utah, 593 P.2d 147 (1979); *Bader v. Bader*, 18 Utah 2d 407, 424 P.2d 150 (1967); *Morrison v. Federico*, 120 Utah 75, 232 P.2d 374 (1951).

9. *Weiss v. Weiss*, 111 Utah 353, 179 P.2d 1005 (1947); see also *Coons v. Coons*, 6 Wash.App. 123, 491 P.2d 1333 (1971); *De Lima v. De Lima*, 24 Cal.Rptr. 179, 207 C.A.2d 74 (1962).

10. See generally *Anno.: Amount of Attorney's Fees in Matters Involving Domestic Relations*, 59 A.L.R.3d 152; *Nelson on Divorce*, Sec. 29.-06, p. 226.

11. That the relative ability of the respective parties to shoulder the expenses of litigation is a relevant inquiry in this regard, see *Ghost v. Ghost*, 26 Utah 2d 398, 490 P.2d 339 (1971).

result accomplished, and the rates commonly charged for divorce actions in the community, is conspicuously absent.

Inasmuch as this case is remanded for further proceedings, we deem it appropriate to make some observations about the method of proof of the value of attorneys' services.[12]

It is neither practical nor productive for the profession or for the public, to present the impression that compensation for a lawyer's services can always be gauged on a scale of dollars per hour. Perhaps this can be done as to many of the perfunctory services a lawyer performs, but his services in other areas may run the gamut of the complexities of the human condition.

The lawyer's service may include the sharing and identifying with his client in problems of the deepest emotional content, such as the losing or the saving of family relationships, or even at times of life itself, wherein the extremes of sorrow or of happiness may depend upon his failure or success. The same observation can be made in a lesser degree in regard to business matters in which his role is to provide the foundation, guidance and protection of vital rights and property interests. All of these may be materially affected by the quality of the service of the lawyer chosen to serve in such matters.

▌ The choice of a lawyer, and the value of his services, may depend upon a number of factors, including his background of learning and experience, his ability, his integrity and his dedication to the causes with which he identifies himself. Also to be considered is the reputation he has acquired, the nature and importance of the matter, and the amount of money or value of property involved.[13] There is also the matter as to how the lawyer is to be paid: cash in advance, extended credit, whether a fixed amount, or contingent on success, or other conditions.

▌ What the lawyer has to offer should be determined by considering the composite of all of the factors which the parties themselves think relevant. Within the limits of reason and good conscience, and where there is no over-reaching undue influence or oppression, the parties should be at liberty to contract as they desire.[14]

This case is remanded for further proceedings consistent with this opinion. No costs awarded.

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

MAUGHAN, Justice (concurring):

With one exception, I concur with the opinion of the majority. That exception is to the holding concerning support for the 15-year old son. In my view, the ruling of the trial court passed muster. Its limitation is well controlled by the two conditions attached.

---

**12.** See Rule 76(a), U.R.C.P.; see also, *LeGrande Johnson Corporation v. Peterson*, 18 Utah 2d 260, 420 P.2d 615 (1966).

**13.** For a list of some of the factors to be considered in fixing attorneys' fees, see Rule 2–

106A, Rules of Professional Conduct of the Utah State Bar; 7A C.J.S. Attorney & Client 325.

**14.** See *In re Hansen*, Utah, 586 P.2d 413 (1978); 7A C.J.S. Attorney & Client § 304.