# WEISS v. WEISS.

No. 6989. Decided May 2, 1947. (179 P. 2d 1005.)

See 27 C. J. S., Divorce, Sec. 72; Financial condition of parties affecting allowance of suit money in divorce action, note 35 A. L. R. 1079; allowance of travel expenses, note, 111 A. L. R. 1098. See, also, 17 Am. Jur. 448 et seq.

*Romney* and *Boyer,* of Salt Lake City, for appellant.

*White, Wright & Arnovitz,* of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal on the judgment roll from a decree of "no cause of action" and the awarding of expenses of the suit, attorney's fees and temporary alimony in a divorce case.

On February 6, 1946, Mr. Weiss, plaintiff below and appellant here, commenced an action for divorce on grounds of mental cruelty against Mrs. Weiss, defendant below and respondent here. The defendant answered the complaint denying the allegations therein. She did not counter-claim, but before the trial of the case she petitioned the court for temporary alimony, travel expenses and attorney's fees. By stipulation the parties agreed that the plaintiff should pay the defendant $50.00 per month temporary alimony and $100 attorney's fees. The stipulation as to temporary alimony was expressly made subject to any determination of a greater sum by the trial court. No award for expenses, temporary alimony or attorney's fees was made by the court prior to that made in the decree as hereinafter mentioned.

The case was tried on June 13, 1946. The defendant, a resident of New York State came to Utah to defend the action. At the conclusion of the trial the court found that the plaintiff had not been an actual, bona fide resident of the county and state for the required statutory time and that defendant had not treated plaintiff in a manner that would tend to cause him mental distress. The court also found the defendant was entitled to $75 per month from the commencement of the action to the entry of the decree as temporary alimony and that she was entitled to receive her expenses for travel, telephone calls, depositions and $300 attorney's fees incurred in defending the action.

A decree of "no cause of action" was entered against the plaintiff and he was ordered to pay defendant $729.00 for the expenses of the suit, temporary alimony and attorney's fees. The money awards gave the plaintiff credit for sums previously paid by him pursuant to the stipulation for temporary alimony and attorney's fees entered into by the parties before the trial.

The first question: Did the trial court err in deciding the merits of the case after it had found that the plaintiff did not have the residence required by the statute to empower the court to grant a divorce?

Section 40-3-1, U. C. A. 1943, as amended by Laws of Utah 1943, Chapter 46, provides in part as follows:

"Proceedings in divorce shall be commenced and conducted in the manner provided by law for proceedings in civil causes, except as hereinafter provided, and the court may decree a dissolution of the marriage contract between the plaintiff and defendant in all cases where the plaintiff shall have been an actual and bona fide resident of this state and of the county where the action is brought for three months next prior to the commencement of the action, for any of the following causes:"

The subject matter of a divorce action is the status of marriage existing between the plaintiff and defendant. The district courts of this state have jurisdiction of divorce generally but do not have jurisdiction of the status of marriage existing between every husband and wife.

The Supreme Court of North Carolina in *State* v. *Williams*, 224 N. C. 183, 29 S. E. 2d 744, 750, said:

"In *Andrews* v. *Andrews*, supra [188 U. S. 14, 23 S. Ct. 237, 47 L. Ed 366] it was said that in divorce actions, domicil is the inherent element upon which jurisdiction must rest, whether the proceeding be ex parte or inter partes. Where one's domicil is, there will his marital status be also. The marriage relation is interwoven with public policy to such an extent that it is dissolvable only by the law of the domicil. So the domiciliary state, and no other, furnishes the proper forum for valid divorce proceedings. Domicil of at least one of the parties is the sine qua non to jurisdiction in actions for divorce."

This decision by the Supreme Court of North Carolina was later affirmed by the United States Supreme Court in the second *Williams* case. *Williams* v. *North Carolina*, 325 U. S. 226, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366.

In their annotation of the subject the editors of A. L. R. write:

"As stated in the earlier annotations, jurisdiction over the subject matter [of divorce] rests upon domicil, or at least residence animo manendi, of at least one of the parties in the divorce forum; and the later cases, in terms or in effect, support the rule, also stated in the original annotation, that, notwithstanding the full faith and credit provision of the Federal Constitution, a decree of divorce rendered

in one state may be impeached and denied recognition in another upon the ground that neither of the parties had a domicil, or residence animo manendi, at the divorce forum; and this, nothwithstanding the recital in the decree or record from the other state of the jurisdictional fact of domicil or residence." 143 A. L. R. 1298.

The pronouncement by the legislature that

"the court may decree a dissolution of the marriage contract * * * where the plaintiff shall have been an actual and bona fide resident of this state and of the county where the action is brought for three months next prior to the commencement of the action."

establishes some of the prerequisites to the district court obtaining jurisdiction of the status of marriage existing between the plaintiff and defendant in a particular divorce action. The above quoted sentence stating that "the court may decree a dissolution of the marriage contract" etc. by implication also states that the court may not (shall not) decree a dissolution of the marriage contract where the plaintiff shall not have been an actual and bona fide resident of this state and of the county where the action is brought for three months next prior to the commencement of the action. This is a limitation on the power of the court to act in respect to the marriage contract and the marriage status ensuing therefrom. If the court finds that there was an actual and bona fide residence as specified it has the power to dissolve or refuse to dissolve the contract depending on what it concludes as to the merits of the case. If it finds that there was not such residence it has no power to further act as to the marriage contract and if it acts in such regard it exceeds its authority.

In the case at bar the jurisdiction of the district court was invoked by the filing of plaintiff's complaint alleging the jurisdictional fact of residence. The court after the filing of the complaint had power and authority—in fact the duty—to determine whether or not it had jurisdiction of the status of marriage existing between the defendant and plaintiff. See concurring opinion in *Thomas* v *District Court, of Third Judicial Dist. in and*

*for Salt Lake County,* 110 Utah 245, 171 P. 2d 667. It investigated the fact of plaintiff's residence and found that he did not have the residence required by the statute. The court had power to determine that jurisdictional fact, but having determined that the length and type of residence required for it to obtain jurisdiction of the status of marriage between the plaintiff and defendant did not exist it should have dismissed the action for lack of jurisdiction respecting the marriage contract and the status of marriage ensuing therefrom. As the plaintiff did not have the residence required by the statute the district court did not obtain jurisdiction of the status of marriage in this case and any judgment or order made in reference thereto is of no effect.

We recognize that there may be rare instances in divorce actions when the defendant has been brought from afar into this jurisdiction by summons bringing witnesses for the purpose of defending on the merits where the residence of the plaintiff may be a close question. The situation in *Kidman* v. *Kidman,* 109 Utah 81, 164 P. 2d 201. There is nothing to prevent the trial court from postponing its determination of the question of residence until all the evidence is in. In fact, unless the evidence palpably revealed at the outset that there was not sufficient residence, that is what the trial court would naturally do. In such case the evidence of the witnesses taken under oath would be preserved. If the trial court found insufficient residence and the case were reversed as to such finding and before the retrial the witnesses had departed their evidence recorded under oath could be read into the record on the retrial. Section 104-51-16, U. C. A. 1943.

The next question: Did the trial court err in awarding the defendant temporary alimony, travel expenses, attorney's fees and other expenses incurred by her in defending the suit?

The fact that the district court had no jurisdiction of the status of marriage between the plaintiff and the defendant

has no effect on the award for temporary alimony, expenses of suit and attorney's fees.

In this state and in fact in many states the old basis of matrimonial domicile as the condition for jurisdiction of the "matrimonial res" or marital status has given way to "unitary domicile" as the basis of jurisdiction. And unitary domicile need be, according to the interpretations of certain of the state courts construing the term "residence" as used in the statutes, little if any more than mere presence in the state for the prescribed length of time, and under the second *Williams case,* supra, states other than that of the original forum are free to attack collaterally the jurisdictional grounds of the decree granted by the divorcing state. The confusion and uncertainty of divorce decrees in any other than the state granting them by the present state of the law is well pointed out in the dissenting opinions in the second *Williams case,* supra. It should be pointed out that the matter of legal confusion and uncertainty is not identical with the deeper underlying social problems that are involved in easy and strict divorce laws upon which the stability or deterioration of our social structure may depend although they are connected problems. And it is not here our province to suggest social remedies. See, however, "Suggested Solution of Interstate Divorce Problems," J. M. Radin, Vol. I, No. 2. "The Lawyer and Law Notes." Only are we concerned with the general situation as the concrete facts of this case may be a part of that general situation. And part of the general situation is that one spouse may migrate from the state of residence, leaving the other spouse behind and seek temporary residence in another state, obtain due process by constructive service on the spouse remaining behind. Under these circumstances we should at least so construe the law as to place as few barriers as possible in the way of the defending spouse to adequately defend him or herself in the forum selected by the complaining spouse. And lack of adequate expense money for the defending spouse would ordinarily constitute a handicap if not a barrier. It is within the power

of the spouse bringing the action to choose the forum and it is encumbent upon him to file the action only when he can meet the jurisdictional requirements. If he files it prematurely he only has himself to blame if the wife may be able to successfully defend on the ground of lack of jurisdiction, and he is required to pay her expenses in making that defense.

Plaintiff contends that since these awards were made after the expenses of suit had been incurred and after the defendant had supported herself during the pendency of the action they reimbursed her for expenses incurred on her own credit or already paid for by her. He argues that necessity is the basis of allowing a wife expenses of suit, attorney's fees and temporary alimony; that is, to enable her to defend or prosecute a suit for divorce and to subsist during its pendency and if the woman has already paid those expenses or credit for same has been extended to her for them no necessity exists.

Our statute regarding temporary alimony and expense money allowance is Section 40-3-3, U. C. A. 1943, and reads as follows:

"The court may order either party to pay to the clerk a sum of money for the separate support and maintenance of the adverse party and the children, and to enable such party to prosecute or defend the action.".

It is true, as contended by the plaintiff, that the allowance of temporary alimony and suit money is based on the necessity of the party receiving same. See Annotations at 111 A. L. R. 1098 and 35 A. L. R. 1099. The common law recognized the pecuniary dependence of the wife on the husband and that when he or she sued for divorce the wife, whether plaintiff or defendant, would in most cases, be left without resources to prosecute or defend.

We have held that the allowance of temporary alimony and suit money is largely a matter within the sound discretion of the trial court as is the amount of the awards if made. *Openshaw* v. *Openshaw*, 80 Utah 9, 12 P. 2d 364; *Burtt* v. *Burtt*, 59 Utah 457, 204 P. 91.

Though the same statute (40-3-3) deals with both expenses of suit and temporary alimony and does not distinguish between those items, we will discuss expenses of suit separate from attorney's fees and temporary alimony because the latter two items were in this case covered by a stipulation between the parties.

As to expenses of suit: Does the fact that the award for expenses of suit was made after the expenses were paid or credit extended therefor, show the defendant had no need for the sums and that therefore the trial judge erred in making the awards? We think not. The fact that ▇▇ the defendant was able to pay the expenses of the suit or to obtain credit for these expenses is evidence that she could obtain credit but the fact that she had to go into debt may make reimbursement of expense money all the more necessary. These facts should be considered by the court in its determination of whether or not to make the awards and the amount of same. Those facts alone do not show that such awards are unjustified. Presumably the trial judge considered them in his determination of whether the awards should be made and the amounts thereof. This appeal is on the judgment roll. We do not have the testimony on the question of the defendant's necessity before us, so we must assume that the evidence supported the awards. The statute does not contemplate that awards for expenses of suit or for temporary alimony should be made only in those cases where the "adverse party" (usually the wife) is destitute or practically so. It contemplates such awards when in the sound discretion of the court the circumstances of the parties are such that in fairness to the wife she should be given financial assistance by her husband in her prosecution or defense of the divorce action, and for her support during its pendency. Keezer, Marriage and Divorce (3rd Ed.) Section 604, page 679.

Now as to the awards of temporary alimony and attorney's fees, which items were the subject of a stipulation entered into by the parties before the trial: ▇▇ The pertinent parts of the stipulation pertaining to temporary alimony reads as follows:

"1. That during the pendency of this action, the plaintiff shall pay to the defendant the sum of Fifty Dollars ($50.00) per month as support money for the defendant.

    *  *  *  *

"3. These amounts are to be accepted by the defendant without prejudice to the rights of the defendant to have the court fix and determine the sum which the plaintiff shall be required to pay to the defendant as temporary support money for the defendant, and if the court fixes an amount in excess of $50.00 per month, plaintiff will pay that excess."

The plaintiff recognized defendant's right to temporary alimony and agreed to $50.00 per month or such greater sum as the court might fix. He cannot prevail in his contention that it was improper for the court to award temporary alimony at the end of the trial. The award in respect to temporary alimony simply made a part of its order an obligation the parties had recognized by stipulation. Therefore, under the circumstances of this case, it was not error for the trial court to award temporary alimony in its determination of the case. Whether it would have been error to make such an award at the end of the trial in the absence of the stipulation involved in this case we need not decide.

Paragraph two of the stipulation above referred to includes the following as to attorney's fees:

"That plaintiff shall pay a further sum of One Hundred Dollars ($100.00) as attorneys' fees to enable the defendant to defend said action, said sum to be for the use of defendant's attorneys in the state of Utah and the State of New York."

By that stipulation the plaintiff recognized an obligation to pay for defendant's attorneys' fees before the services were rendered. The fact that the stipulation provided for the plaintiff to pay $100 does not preclude the court from awarding an additional sum. The defendant did not agree to receive $100 as complete and final settlement of all claims she had or might have on plaintiff for attorney's fees. In *Anderson* v. *Anderson*, 54 Utah 309, 181 P. 168, a suit for separate maintenance, we affirmed an award for attorney's

fees made in the decree and after the legal services had been rendered. In *Burtt* v. *Burtt*, 59 Utah 457, 204 P. 91, we affirmed the awarding of $750 additional attorney's fees after the services had been performed. We see little difference between awarding additional attorney's fees in the decree and after the services have been performed and awarding the entire sum at that time.

There are practical considerations which make it desirable that awards of attorney's fees and expenses of suit may be made in the decree. Before those expenses are incurred it is ofttimes difficult to ascertain the specific sum which will be needed for those items. Also there is no assurance that the money awarded at the beginning of the suit will be expended for the purpose for which awarded unless some control is placed over it by the court. It is our opinion that the statute allows, and the practicalities of the situation require, that awards of attorney's fees and expenses of suit may be made by the trial court in the decree and after those expenses have been paid for by the party or credit extended therefor, provided the necessity for such awards is found to exist.

The decree is modified by striking paragraph number "1" and substituting the following:

"The case is dismissed because the court has no jurisdiction over the status of marriage between the plaintiff and defendant."

The decree as modified is affirmed. Costs to the defendant.

McDONOUGH, C. J., and PRATT, and LATIMER, JJ., concur.

WADE, Justice.

I concur. However, I think it is not necessary for us to hold that the court could grant temporary alimony or support money, after the expenses for such support has been incurred, on the ground that the parties had stipulated to that effect. That question involves the same principles as

are involved in the question of whether the court may award attorney's fees and costs of trial after those expenses have been incurred. Section 40-3-3, U. C. A. 1943, provides for both in the same words. The possibility of obtaining credit in both instances are the same and the necessity for support is just as urgent as for attorney's fees. I think that all of the reasons given in the prevailing opinion in support of the second proposition are equally applicable to the first question. I, therefore, think we should base our decision on the question of alimony on those principles rather than base it on the stipulation.