2008 UT App 11

**Rick L. STONEHOCKER, Petitioner, Appellant, and Cross-appellee,**

v.

**Jacqueline F.M. STONEHOCKER, Respondent, Appellee, and Cross-appellant.**

No. 20060292–CA.

Court of Appeals of Utah.

Jan. 10, 2008.

478

Steven R. Bailey, Ogden, for Appellant.

Robert A. Echard, Ogden, for Appellee.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Petitioner Rick L. Stonehocker (Husband) appeals and Respondent Jacqueline F.M. Stonehocker (Wife) cross-appeals the trial court's rulings regarding property distribution, debt allocation, and attorney fees in the parties' divorce action. We affirm in part, reverse in part, and remand for the entry of further findings of fact and conclusions of law.

## BACKGROUND

¶ 2 Husband and Wife married on April 25, 1998. The parties had no children. After separating and reconciling several times, Husband filed a divorce petition on September 23, 2002. At trial, both parties presented evidence on the appropriate division of marital property and alimony. The trial court entered a Memorandum Decision on July 8, 2005, in which it distributed the parties' property and debts based on a finding that "no exceptional circumstances for an unequal division of personal marital property" existed. The court also denied Wife's request for alimony.[1]

¶ 3 The assets in dispute include a timeshare property located in Cabo San Lucas, Mexico (the Timeshare), the parties' personal residence in West Haven, Utah (the Family Home), a 1998 Volkswagen Passat (the Volkswagen), and a car dealership known as Stoney Motors, LLC (Stoney Motors). The debts in dispute include a mortgage balance of approximately $328,765 on the Family Home (the Mortgage), a $44,990 line of credit secured by the Family Home (the Line of Credit), and a $52,000 loan from Wife's father, Carl Manzel (the Manzel Loan).

¶ 4 The Family Home, built by the parties in 2001, recently appraised at $455,000. The building lot was purchased in 1999 by Husband for $46,000. Accepting the appraised value of the Family Home, less the Mortgage balance of approximately $328,765 and the Line of Credit balance of $44,990, the parties both value the equity in the Family Home at approximately $81,000. While the divorce was pending, Wife lived in the Family Home and her sister, Mary Ann Nessen (Sister), resided with her for approximately eleven months. Sister paid Wife $500 per month in rent. Throughout the divorce proceedings and pursuant to a pretrial order, Wife paid the utility bills for the Family Home and Husband made the monthly payments on the Mortgage and the Line of Credit.

¶ 5 Husband formed Stoney Motors, a used car dealership, in 2001. During the course of the marriage, Husband's dealership was the primary source of income.[2] The trial court found that although Wife is listed as an equal owner of Stoney Motors, she was not involved in the day-to-day operations of the business. The trial court also found that Stoney Motors was valued at about $200,000 by Wife's accountant and at approximately $100,000 by Husband's accountant.[3] The primary difference in the two valuation methods was that Wife's figure included amounts attributed to the goodwill of the company.

¶ 6 In its July 5, 2005 Memorandum Decision, the trial court awarded full ownership

1. Wife does not challenge that decision on appeal.

2. Prior to forming Stoney Motors, Husband was a wholesaler operating under the name of Good One Auto Sales. That business was discontinued at the direction of the State of Utah because Husband had not yet obtained an automobile dealer's license.

3. The record indicates that the $100,000 figure actually comes from the testimony of Wife's expert, wherein he related a conversation with Husband's expert concerning the value of Stoney Motors. Husband's expert denied expressing that opinion to Wife's expert.

of the Family Home to Wife, as well as full responsibility for payment of the Mortgage and Line of Credit. The court also determined that the payments Husband made for the building lot constituted a premarital asset, and awarded Husband a $46,000 lien against the Family Home. The court awarded the Timeshare to Husband, the Volkswagen to Wife, and determined that Wife was fully responsible for the Manzel Loan. The trial court also ruled that Stoney Motors is in reality a sole proprietorship of Husband, dependent upon his personal professional reputation. Therefore, the court did not award any interest in Stoney Motors to Wife and assessed its value without including an amount for goodwill. Finally, the trial court ordered Husband to pay $25,000 of Wife's attorney fees, based in part on a finding that Husband's desire to deny Wife any property was "unreasonable, untenable[,] and totally unrealistic."

¶ 7 In response to the July 5, 2005 Memorandum Decision, the parties filed multiple motions, including motions for clarification. The trial court heard argument on September 21, 2005 (the Clarification Hearing), during which it entered oral findings of fact. At the Clarification Hearing, the trial court modified its prior ruling and determined that Husband was responsible for the Line of Credit because the money borrowed against the Family Home was invested in Stoney Motors. The court then ordered that Husband's $46,000 lien on the Family Home would be satisfied by Wife's repayment of the $44,990 Line of Credit. All other rulings remained unchanged. On January 3, 2006, the trial court entered a Decree of Divorce and Findings of Fact and Conclusions of Law. During the period from July 5, 2005, when the Memorandum Decision was entered, and January 3, 2006, when the final Decree of Divorce was entered, Husband continued to pay the Mortgage and Line of Credit. Husband appeals and Wife cross-appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 The primary issue on appeal is the parties' challenge to the trial court's allocation of property and debt. "Trial courts have considerable discretion in determining ... property distribution in divorce cases, and will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Howell v. Howell*, 806 P.2d 1209, 1211 (Utah Ct.App.1991); *see also Olsen v. Olsen*, 2007 UT App 296, ¶ 8, 169 P.3d 765 (stating that trial court has "broad latitude" when distributing property in divorce proceedings (internal quotation marks omitted)).

■ ¶ 9 In a related argument, Husband asserts that the trial court's findings of fact regarding the property and debt distribution are insufficient to support its conclusions or to allow for "meaningful" appellate review. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a). In addition, to challenge the findings of fact, Husband must first "marshal the evidence in support of the findings and then demonstrate that the findings are unsupported by substantial evidence." *Featherstone v. Industrial Comm'n*, 877 P.2d 1251, 1254 (Utah Ct.App.1994); *see also Moon v. Moon*, 1999 UT App 12, ¶ 24, 973 P.2d 431 (discussing marshaling requirement).[4]

■ ¶ 10 Husband also claims that the trial court erred by awarding attorney fees to Wife in the sum of $25,000 without entering sufficient findings of fact. In a divorce proceeding, " '[b]oth the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion.' " *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 30, 147 P.3d 464 (quoting *Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct.App. 1998)). However, the trial court's award or denial of attorney fees "must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay,

---

4. Wife urges us to affirm on the ground that Husband has failed to meet his marshaling requirement. We hold that Husband has met the minimum threshold of his marshaling burden, and we will therefore analyze the merits of each of Husband's challenges on appeal. *See Moon v. Moon*, 1999 UT App 12, ¶ 24, 973 P.2d 431 (discussing duty to marshal the evidence).

and the reasonableness of the requested fees." *Id.* (internal quotation marks omitted).

¶ 11 Finally, Wife asks us to award her attorney fees on appeal. " 'In divorce actions where the trial court has awarded attorney fees and the receiving spouse [prevails] on the main issues, we generally award fees on appeal.' " *Id.* ¶ 17 (quoting *Elman v. Elman,* 2002 UT App 83, ¶ 43, 45 P.3d 176).

## ANALYSIS

¶ 12 There are two main issues on appeal.[5] First, the parties both argue that the trial court exceeded its discretion in distributing their marital and separate property and debts. Second, Husband disputes the trial court's award of attorney fees to Wife, as well as whether Wife is entitled to attorney fees on appeal. We discuss each issue in turn.

### I. Property and Debt Distribution

¶ 13 The parties take issue with the trial court's distribution of their property and debt. "In Utah, marital property is ordinarily divided equally between the divorcing spouses and separate property, which may include premarital assets, inheritances, or similar assets, will be awarded to the acquiring spouse." *Olsen v. Olsen,* 2007 UT App 296, ¶ 23, 169 P.3d 765; *see also* Utah Code Ann. § 30-3-5(1) (2007) ("When a decree of divorce is rendered, the [trial] court may include in it equitable orders relating to the children, property, debts or obligations, and parties."). "[T]he primary purpose of a property division, in conjunction with an alimony award, is to achieve a fair, just, and equitable result between the parties." *Riley v. Riley,* 2006 UT App 214, ¶ 27, 138 P.3d 84. Furthermore, "[i]n a divorce proceeding, the trial court should make a distribution of property and income so that the parties may readjust their lives to their new circumstances as well as possible." *Gardner v. Gardner,* 748 P.2d 1076, 1078 (Utah 1988).

In making its determination "[a] trial court does not consider property division in isolation . . . . [and] shall consider all the circumstances of the parties in determining the distribution of real and personal property, including the obligations of the parties for child and spousal support." *Rosendahl v. Rosendahl,* 876 P.2d 870, 874–75 (Utah Ct. App.1994) (citation and internal quotation marks omitted).

¶ 14 Husband claims that the trial court erred by (1) offsetting his $46,000 premarital investment in the Family Home against the $44,900 Line of Credit; (2) failing to address the issue of equity in the Family Home; (3) awarding the 1998 Volkswagen to Wife; (4) failing to address the issue of rent received by Wife during the divorce proceeding; and (5) failing to set a date by which Husband's temporary obligations to pay the Mortgage and Line of Credit would terminate. In her cross-appeal, Wife claims that the trial court erred by (1) failing to award her an interest in Stoney Motors and (2) failing to require Husband to pay one-half of the Manzel Loan.

¶ 15 In making a property distribution, the trial court considers and must make findings on several issues. First, the court must identify the property in dispute and determine whether each item is marital or separate property. *See, e.g., Hall v. Hall,* 858 P.2d 1018, 1022 (Utah Ct.App.1993) ("[T]he trial court should 'first properly categorize the parties' property as part of the marital estate or as the separate property of one or the other.' " (quoting *Burt v. Burt,* 799 P.2d 1166, 1172 (Utah Ct.App.1990))); *Stevens v. Stevens,* 754 P.2d 952, 955 (Utah Ct.App.1988) (remanding for further findings where "trial court did not . . . identify the items of marital property and debt"). Next, the trial court should consider whether there are exceptional circumstances that overcome the general presumption that marital property be divided equally between the parties. *See Bradford v. Bradford,* 1999 UT App 373, ¶ 27, 993 P.2d 887 (holding that where such

---

5. As a general challenge, Husband asserts that the trial court failed to comply with rule 52(a) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 52(a), in that its findings of fact are insufficient to support its conclusions or to allow "meaningful" appellate review. Husband's appellate counsel was not involved during the trial of this matter. To avoid repetition, we address this claim within the context of each of Husband's substantive arguments.

exceptional circumstances exist, they must be "memorialize[d] in ... detailed findings" (internal quotation marks omitted)). The trial court is then required to assign values to each item of marital property so that the distribution strategy, whether equal or weighted in favor of one party, can be implemented. *See, e.g., Gardner,* 748 P.2d at 1079–80 (remanding for further findings where trial court did not determine the present value of husband's retirement account or medical business); *Stevens,* 754 P.2d at 955 (remanding for further findings where "trial court did not ... assign values to each item of distributed property and debt or a total value to the cumulative share awarded to each party"); *Jones v. Jones,* 700 P.2d 1072, 1074 (Utah 1985) (explaining requirement that trial court set values for various items of property included in the distribution). Finally, the court must distribute the items of marital property in a manner consistent with that distribution strategy, with a view toward allowing each party to go forward with his or her separate life. *See Gardner,* 748 P.2d at 1079 ("The purpose of divorce is to end marriage and allow the parties to make as much of a clean break from each other as is reasonably possible.").

¶ 16 In addition, the Utah Supreme Court has summarized the requirements for findings of fact as follows:

Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment. The findings of fact must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.

*Id.* at 1078 (internal quotation marks, citations, and omission omitted).

¶ 17 Rule 52(a) of the Utah Rules of Civil Procedure, which governs findings of fact, states that "[i]t will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court." Utah R. Civ. P. 52(a); *see also Erwin v. Erwin,* 773 P.2d 847, 849 (Utah Ct.App.1989) ("In assessing the sufficiency of the findings ... we are not confined to the contents of a particular document entitled 'Findings'; rather, the findings may be expressed orally from the bench or contained in other documents...."). Furthermore, "[a]dequate findings are ... necessary for [appellate courts] to perform [their] assigned review function." *Smith v. Smith,* 726 P.2d 423, 426 (Utah 1986). Here, the trial court entered two documents summarizing its findings: the July 5, 2005 Memorandum Decision and the January 3, 2006 Findings of Fact and Conclusions of Law. The trial court also made oral findings at the Clarification Hearing. Below, we consider the challenge to the findings of fact as we address each substantive issue. In doing so, we review the written and oral findings of fact together to determine if they are sufficient to support the trial court's rulings. We note, however, that for purposes of appellate review, written findings are the better practice because they reduce the likelihood of ambiguity created by an incomplete or unclear record.

¶ 18 Although the trial court entered lengthy findings after patiently enduring a nine-day trial in this matter, we are hampered in our review by the absence of any findings on some critical issues.[6] We can find no indication, either in the oral and written findings or elsewhere in the record, of the classification of the relevant items as marital or separate property. Furthermore, despite careful review of the trial transcript and the written and oral findings, we can find no place where the trial court assigned values to the various items of property.[7] Although the trial court thoughtfully explains its decision not to include goodwill as a component of the business's worth, the value of Stoney Motors

---

6. We note that the findings and conclusions were prepared jointly by counsel for the parties and submitted to the trial court for review and entry.

7. The trial court does indicate that the equity in the Family Home is $81,000.

absent goodwill is never stated.[8] Without knowing what value the trial court placed on the business, we cannot evaluate whether the ultimate distribution between the parties was relatively equal.

¶ 19 Likewise, there are no findings to indicate the value assigned by the trial court to the Timeshare or the Volkswagen. Our review of the record indicates that there is testimony concerning a range of Blue Book values for the Volkswagen and that the parties offered conflicting evidence as to the value of the Timeshare. We can find no place where the trial court resolved the dispute regarding the value of these items. Without findings as to the value of the property distributed to each party, we are unable to evaluate whether the trial court exceeded its discretion.

¶ 20 The Utah Supreme Court was faced with a very similar situation in *Jones v. Jones*, 700 P.2d 1072 (Utah 1985), because "neither the [trial court's] memorandum decision nor the findings assigned individual values to each of the assets or a total value to the cumulative share being awarded to each party." *Id.* at 1073. In particular, the trial court neglected to set a value for the husband's retail pharmacy business. The *Jones* court explained the problem this omission created for appellate review, stating:

> Ordinarily, we would assess the merit of such an assertion [that the property distribution was inequitable] by reviewing the trial court's findings of fact and the values it assigned to the various items of property included in the distribution. However, in the present case there are no findings of fact that fix these values. In an attempt to compensate for the trial court's failure to make such findings, we have reviewed the record to determine whether the values were apparent from the evidence. *However, that examination reveals that the valuation of the most important assets was hotly disputed by the parties.* If the trial court accepted one set of values, the wife was clearly awarded too little; if another

set was adopted, it is possible that the trial court did not abuse its discretion.

> *On the present record, we cannot determine whether the trial court distributed the property equitably.*

*Id.* at 1074 (emphasis added).

¶ 21 The same is true here. Without unchallenged testimony in the record or specific findings of value by the trial court, we are unable to determine the value of Stoney Motors, the Timeshare, or the Volkswagen. Furthermore, the court's comments at the Clarification Hearing that the equity in the Family Home is Wife's separate property raise questions about the proper consideration of that asset in comparing the relative value of the award to each spouse. The Utah Supreme Court explained the role of separate property in divorce settlements, as follows:

> [I]n making that division [of marital property], the donee or heir spouse should not lose the benefit of his or her gift or inheritance by the trial court's automatically or arbitrarily awarding the other spouse an equal amount of the remaining property which was acquired by their joint efforts to offset the gifts or inheritance. *Any significant disparity in the division of the remaining property should be based on an equitable rationale other than on the sole fact that one spouse is awarded his or her gifts or inheritance.*

*Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988) (emphasis added). Thus, although the trial court could make an award of marital property that was weighted in favor of the spouse that did not also have separate property, such a division should be based on an "equitable rationale" set forth in the findings of fact and conclusions of law.

¶ 22 Furthermore, we are unable to avoid remand by holding that Wife has waived her challenge to the distribution by preparing findings and conclusions that do not include property values. *But cf. Jones*, 700 P.2d at 1075 ("[W]ife cannot come now, albeit

---

8. Counsel for Husband acknowledged the importance of this issue at the Clarification Hearing: "I'm going to have to go back and see what the value [of Stoney Motors] is absent goodwill be-

cause I'm not sure that is delineated out." Nevertheless, neither Husband nor Wife ever sought a specific finding on that issue.

through new counsel, and complain of her own failure to include specific property values in the findings of fact. She has waived the claim."); *see also Behrman v. Behrman,* 2006 UT App 257, ¶ 12, 139 P.3d 307. Here, both Husband and Wife have appealed the property distribution and neither challenge can be evaluated on appeal without conclusions regarding the value of the property awarded. Moreover, counsel for both parties collaborated on the findings and conclusions, which were tailored to track the detailed memorandum decision previously issued by the trial court. And although Husband challenged the initial findings, he "made no motion to have the trial court amend the findings to include values." *Jones,* 700 P.2d at 1074. Under these circumstances, neither party is blameless in failing to propose adequate findings and conclusions for entry by the trial court.

▮ ¶ 23 Additionally, we believe the parties adequately preserved a challenge to the findings and conclusions in the trial court. In *438 Main Street v. Easy Heat, Inc.,* 2004 UT 72, 99 P.3d 801, the Utah Supreme Court held that the appellant had not preserved its claim that the findings were not sufficiently detailed where it argued to the trial court only that the findings were not supported by the evidence. *See id.* ¶ 52. Here, the memoranda from the parties in support of their motions for clarification raised the argument now raised on appeal—that the trial court "needed to articulate, in greater detail, the steps by which [it] reached [its] ultimate conclusion." *Id.* Consequently, we reverse and remand for further findings.

▮ ¶ 24 We do so reluctantly. The trial court exhibited commendable restraint in entertaining the extensive and often irrelevant[9] evidence presented during this nine-day trial. And, the court engaged in a thoughtful review of the controlling authority concerning allocation of goodwill in divorce settlements. Nevertheless, without findings from which we can ascertain how the trial court categorized and valued the property, we cannot assess the merits of the challenges to its

distribution. Although we have a general sense that the distribution was equivalent, we cannot test that premise without reference to specific values for the items of property awarded to each spouse. Consequently, we must reverse and remand for more complete findings. Where we are able, however, we address the other substantive points raised by the parties in an attempt to assist the trial court on remand. By doing so, we do not intend to suggest that the trial court is precluded from making different findings of fact or conclusions of law during remand. "The trial court may adjust the property distribution as necessary after assigning values to ensure equity." *Stevens v. Stevens,* 754 P.2d 952, 955 (Utah Ct.App.1988) (citing *Smith v. Smith,* 738 P.2d 655, 658 (Utah Ct.App. 1987)).

## A. Wife's Obligation to Pay the Line of Credit

▮ ¶ 25 The trial court ruled that Husband's investment of $46,000 in the Family Home's building lot was a premarital asset and therefore gave Husband a lien on the Family Home for $46,000. After the September 21, 2005 Clarification Hearing, however, the court modified the Memorandum Decision and ruled that Wife "shall assume and pay th[e][L]ine of [C]redit which shall be a full satisfaction for [Husband's] premarital investment in the home of approximately $46,000." Thus, the modification removed Husband's $46,000 lien from the Family Home, but required Wife to repay the Line of Credit used by Husband to fund Stoney Motors.

¶ 26 Husband claims that the trial court's modification of the Memorandum Decision was improper because it was not supported by sufficient findings of fact. Under rule 52(b) of the Utah Rules of Civil Procedure, a "[trial] court may amend its findings or make additional findings and may amend the judgment accordingly." Utah R. Civ. P. 52(b). Here, both parties filed motions to clarify the

---

9. Promises that the relevance of the questionable evidence would become apparent when it was "connected up" were, in large part, unfulfilled.

trial court's Memorandum Decision.[10] During the Clarification Hearing, the parties argued extensively about whether the Line of Credit was a debt of Stoney Motors—and thus, an obligation of Husband—or a debt on the Family Home—and thus, an obligation of Wife. In the written findings of fact and conclusions of law, the trial court expressly found that the funds from the Line of Credit were "transferred into the Stoney Motors business account during May 2001" and concluded that the Line of Credit "is a debt of Stoney Motors." The court then ordered Wife to "assume and pay" the Line of Credit in "full satisfaction" of Husband's premarital investment. By its ruling, the trial court simply ordered that the $46,000 owed to Husband for his contribution of premarital property be offset by the $44,990 Husband borrowed from the equity in the Family Home to capitalize Stoney Motors.

¶ 27 Our review of the transcript assures us that the trial court's findings of fact on this issue are supported by the evidence. The trial court considered conflicting evidence on this point and rejected Husband's explanation in favor of Wife's. We defer to the trial court's assessment of the credibility of this testimony. *See Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App.1991). Because "[f]indings of fact in divorce appeals are subject to the clearly erroneous standard of review," *id.,* and because "[t]he findings of fact ... show that the court's judgment or decree follows logically from, and is supported by, the evidence," *Gardner v. Gardner,* 748 P.2d 1076, 1078 (Utah 1988) (internal quotation marks omitted), we will not disturb the trial court's ruling that the funds borrowed against the Line of Credit were used to fund Stoney Motors. Likewise, we approve the trial court's ruling that Wife's obligation to pay the Line of Credit will satisfy Husband's premarital investment in the Family Home.

**B. Equity in the Family Home**

¶ 28 Husband next asserts that the trial court erred by failing to address the issue of how the equity in the Family Home should be distributed. Both parties estimate the equity at approximately $81,000.[11] The trial court addressed its reasons for giving the Family Home to Wife at the Clarification Hearing. Specifically, the court stated that "one of the reasons [it] gave [Wife] the home was because her father had put $90,000 worth of labor into it." The trial court also noted that the $90,000 worth of labor was a "gift" to Wife from her father.[12]

¶ 29 The Utah Supreme Court has determined that when one party in a divorce proceeding uses separate property to purchase a marital home, that party is entitled to the equity in the home that resulted from his or her investment. *See Newmeyer v. Newmeyer,* 745 P.2d 1276, 1278 (Utah 1987) (upholding trial court's ruling that the wife should receive credit for her inherited separate property that she invested in the parties' home during the marriage). But

[t]he rule that property acquired by gift or inheritance by one spouse should be awarded to that spouse ... does not apply when the property thus acquired is consumed, such as when a gift or an inheri-

---

**10.** Husband argues that the motions to clarify are essentially motions to reconsider that are not recognized by the Utah Rules of Civil Procedure. Although such postjudgment motions are ineffective to extend the time for appeal, *see Gillett v. Price,* 2006 UT 24, ¶ 1, 135 P.3d 861, a trial court may reconsider or revise its nonfinal judgments, *see id.* ¶ 10; *see also* Utah R. Civ. P. 52(b) (allowing a trial court to modify its findings even after judgment); *id.* R. 54(b) (providing that a decision that does not adjudicate all of the claims is subject to revision anytime before a final judgment on all claims is entered).

**11.** This value assumes that Husband's $46,000 lien on the property is offset by the Line of Credit.

**12.** The trial court concluded that the equity in the Family Home was Wife's separate property because of that inheritance:

> THE COURT: Now, [Counsel for Husband], you had one other question on here about the [Family Home:] ... is the $35,305 net equity [calculated with Husband's $46,000 lien still in place] in the home awarded to [Wife] as separate property or marital property?
> [Counsel for Husband]: Correct. I understand you're telling me it's separate property.
> THE COURT: That's what I thought, I just didn't make it clear. That's what I intended.

tance of money is used for family purposes; when the property completely loses its identity and is not traceable because it is commingled with other property ...; or when the acquiring spouse places title in their joint names in such a manner as to evidence an intent to make it marital property.

*Mortensen v. Mortensen*, 760 P.2d 304, 307 (Utah 1988) (citations omitted). The question of whether a gift or inheritance has remained separate is highly fact intensive and the trial court is in the best position to weigh the evidence and make that determination. *See, e.g., Hall v. Hall*, 858 P.2d 1018, 1022–23 & n. 1 (Utah Ct.App.1993) (recognizing that Wife's inheritance retained separate property status although used to purchase lot and contribute toward construction costs of marital residence); *Newmeyer*, 745 P.2d at 1277–78 (affirming trial court's treatment of Wife's inheritance as her separate property despite the fact that it was used to purchase marital home many years prior to divorce and the parties had upgraded their residence twice since then).

¶ 30 Here, the trial court relied on testimony from Wife's father that he intended the $90,000 worth of construction services he performed on the Family Home to be an advance on Wife's inheritance. The court then explained that it awarded Wife the Family Home to give her the benefit of that inheritance. Husband appears to challenge both the finding that the gift was not intended for the couple and the finding that the services provided were worth $90,000. Because the trial court was in the best position to evaluate the evidence on the issue of the nature of the gift from Wife's father, we will not disturb that finding. With respect to the estimate that the work performed by Wife's father was worth $90,000, Husband points us to no contrary evidence on that point. Thus, we will not disturb the trial court's conclusion that the construction services were worth $90,000.

**13.** In closing arguments, however, Husband's counsel admitted that the "Volkswagen Passat ... belong[s] in the marital estate."

¶ 31 The trial court treated the $81,000 of equity in the Family Home as Wife's separate property to compensate her for the $90,000 of her inheritance used to improve that asset. Although we are unable to evaluate the overall property settlement because of the lack of findings on value, the recognition of Wife's separate property interest in the improvements to the Family Home was within the trial court's broad discretion.

C. The 1998 Volkswagen Passat

¶ 32 Next, Husband challenges the trial court's award of the 1998 Volkswagen to Wife. According to Husband, the Volkswagen is an asset of Stoney Motors, and the award of the Volkswagen to Wife conflicts with the trial court's ruling that Wife is not entitled to receive any interest in Stoney Motors as a marital asset. At trial, Husband testified that the Volkswagen was purchased with funds from Stoney Motors and that it should be returned to Stoney Motors.[13] The trial court ruled that all real and personal property acquired during the marriage would be divided equally between the parties. It then awarded the Timeshare to Husband and the Volkswagen to Wife.[14]

¶ 33 Husband testified at trial that the Blue Book showed the average value of a 1998 Volkswagen Passat as $5850 for trade-in and $7675 for retail. Wife relies on a bookkeeping entry that records a $5500 payment for the Volkswagen. With respect to the Timeshare, Husband testified that the purchase price was $6210 and Wife testified that an unidentified salesperson in Cabo San Lucas, Mexico, told her it was worth $8500. Again, it is impossible to tell from the findings of fact what value the trial court placed on these assets, although their values may have been relatively equal. Consequently, we remand this issue for further findings of fact. We note, however, that we do not suggest that the trial court exceeded its discretion in awarding the Volkswagen to Wife and the Timeshare to Husband. *See Watson v. Watson*, 837 P.2d 1, 5 (Utah Ct.App.1992)

**14.** At the Clarification Hearing, the trial court stated that "my thinking was .... [that Wife] gets the home, [Wife] gets the car, [Husband] ought to get the [T]ime [S]hare."

(affirming award of vehicle titled in the name of husband's solely-owned corporation to wife), *abrogated in part on other grounds by Lyon v. Burton,* 2000 UT 19, ¶ 76 n. 18, 5 P.3d 616. Without knowing the values of these and the other items of property, we simply are unable to assess whether the overall property settlement was roughly equal.

### D. Rental Income

■■■ ¶ 34 While this divorce action was pending, Sister lived with Wife at the Family Home. Sister paid Wife $500 per month in rent throughout this period. Husband contends that the trial court should have imputed this rental income to Wife for purposes of equitably distributing the parties' property.[15] *Cf. Jeppson v. Jeppson,* 684 P.2d 69, 70 (Utah 1984) (including rental income received by the wife for purposes of determining whether termination of alimony was proper). We agree with Husband that, if the Family Home is a marital asset,[16] income generated from that asset is also marital property. *Cf. Schaumberg v. Schaumberg,* 875 P.2d 598, 603 (Utah Ct.App.1994) (stating that where the husband used marital funds to maintain and augment his separate property, the property's character changed to marital property and the wife was entitled to one-half the appreciation). Here, the record indicates that Wife received $500 per month for approximately eleven months, resulting in total rental income of $5500. If this income is marital property, Husband could claim half of that amount—$2750.

¶ 35 During the Clarification Hearing, the trial court refused to make any adjustments to its Memorandum Decision to account for the rental income. Although the transcript is incomplete, the context of the discussion with counsel suggests that the trial court found the rental income insignificant in the scheme of the entire property settlement.

In making its rulings, the trial court shall "consider all the circumstances of the parties in determining the distribution of real and personal property." *Rosendahl v. Rosendahl,* 876 P.2d 870, 875 (Utah Ct.App.1994) (internal quotation marks omitted). The court awarded Wife the Family Home and the Volkswagen, but required Wife to assume the debt on the Family Home. Husband was awarded the Timeshare and Stoney Motors, including its debt. In light of the total assets awarded, it may be a proper exercise of discretion for the trial court to allow Wife to retain all of the rent received from Sister.[17] *Cf. Beardall v. Beardall,* 629 P.2d 425, 427 (Utah 1981) (affirming trial court's award of attorney fees in divorce proceeding, in part, on ground that fees awarded were de minimis). But our ability to reach that conclusion is frustrated by the absence of findings that would allow us to compare the net value of the assets awarded to each spouse and an unambiguous finding as to the character of each item of property, including the Family Home and the income generated from it. Therefore, we remand for the entry of further findings and for the trial court's consideration of the rental income in the context of the overall property settlement.

### E. Husband's Temporary Support Obligation

¶ 36 Husband also asserts that the trial court erred by failing to set a date by which his obligations to pay the Mortgage and the Line of Credit would cease. Early in the litigation, the trial court ordered Husband to pay the Mortgage and Line of Credit while the divorce action was pending. At the Clarification Hearing, the trial court refused to amend the Memorandum Decision to account for the payments rendered by Husband on the grounds that the parties could not "live in separate households for the amount of money that [they had when] they lived together."

---

**15.** Husband asked the trial court to credit the rental income against the monthly mortgage payments that he made during the divorce proceedings.

**16.** We note that the trial court indicated at the Clarification Hearing that the *equity* in the Family Home is the separate property of Wife.

**17.** If Wife's inheritance was $90,000 and the equity in the Family Home was $81,000, the $5500 is still less than the $9000 difference.

¶ 37 Under Utah Code section 30–3–3, a "[trial] court may order a party to provide money, during the pendency of the action, for the separate support and maintenance of the other party." Utah Code Ann. § 30–3–3(3) (2007). We review such grants of temporary support for an abuse of discretion. *See Weiss v. Weiss*, 111 Utah 353, 179 P.2d 1005, 1009 (1947) (stating that "the allowance of temporary alimony and suit money is largely a matter within the sound discretion of the trial court as is the amount of the awards if made"); *see also Peterson v. Peterson*, 818 P.2d 1305, 1310 (Utah Ct.App. 1991) (same). Although neither party refers to Husband's obligation to pay the Mortgage and the Line of Credit during the divorce proceedings as temporary support, we construe such payments as "temporary family support or financial adjustments" as designated by the trial court.

¶ 38 The trial court's pretrial order reveals that it considered the income of both parties when it ordered Husband to pay the Mortgage and Line of Credit and required Wife to pay the utilities on the Family Home throughout the divorce proceedings. During the Clarification Hearing, Husband argued that he should have been relieved from his obligation to pay the Line of Credit and Mortgage upon the entry of the Memorandum Decision. The trial court refused to disturb its prior order, stating that Husband's obligation would continue until the findings and conclusions and final decree were entered. Husband argues that he should not be penalized by the delay between entry of the Memorandum Decision and entry of the final order. We disagree.

¶ 39 The trial court has significant discretion in fashioning temporary support during the pendency of a divorce action. *See Peterson*, 818 P.2d at 1310. Furthermore, Husband was on notice that his obligation would continue until the matter was concluded. Given our deferential standard of review, we will not disturb the trial court's order requiring Husband to pay the Mortgage and the Line of Credit while the divorce proceedings were pending.

### F. Interest in Stoney Motors

¶ 40 In her cross-appeal, Wife claims that the trial court erred by not awarding her a one-half ownership interest in Stoney Motors. The trial court's Memorandum Decision states that Wife is listed on the limited liability company filings as a fifty-percent owner of the company. The court found, however, that Wife is not involved in the daily operations of the business and that she performed only "some billing and paperwork with the dealership several years ago." The trial court also found that "the good will of Stoney Motors is solely attributable to [Husband's] personal, professional reputation." Noting that Wife had only "token involvement," the trial court determined that Stoney Motors is essentially Husband's sole proprietorship. Based on the foregoing, the trial court awarded Stoney Motors solely to Husband.

¶ 41 Wife argues that Stoney Motors is marital property and she is entitled to a one-half ownership interest in the business. Wife cites *Dunn v. Dunn*, 802 P.2d 1314 (Utah Ct.App.1990), in support of her challenge. At issue in *Dunn* was the division of a professional corporation that was created during the marital relationship. *See id.* at 1317–18. The trial court awarded the corporation to the husband, and this court reversed and remanded for an equal division of the business. *See id.* at 1318. The issue in *Dunn* is distinguishable because there the wife sought an interest only in the "tangible assets" of the corporation and claimed no amount for business goodwill. *See id.* Furthermore, the evidence in *Dunn* showed that "the corporation was founded and operated through the joint efforts and joint sacrifices of the parties," and that the wife had "performed bookkeeping and secretarial services without pay for the corporation." *Id.* Here, Wife seeks an ongoing interest in the company, including half of any income generated. In the alternative, if Husband is awarded sole ownership of the business, Wife contends that she should be paid half of its value calculated to include an amount for goodwill. The trial court expressly found that Wife had only "token involvement" in Stoney Motors, and that the business's value was "solely

attributable to [Husband's] personal, professional reputation." Wife has not convinced us that this finding is unsupported by the evidence. As such, we are not persuaded by Wife's reliance on *Dunn*.

¶ 42 The trial court based its award of Stoney Motors to Husband on the Utah Supreme Court's decision in *Sorensen v. Sorensen*, 839 P.2d 774 (Utah 1992). *Sorensen* involved an appeal from a divorce proceeding in which the trial court concluded that the husband's goodwill and reputation made up a large portion of the value of his dental practice, and included that value in the property division. *See id.* at 775. On appeal, the husband challenged the inclusion of goodwill as a component of the value of the practice. *See id.* The supreme court reversed and held that "[i]t would not be equitable to require [the husband] to pay his wife part of the value ascribed to the goodwill, because the goodwill of a sole practitioner is nothing more than his or her reputation for competency." *Id.* The court analogized the goodwill of a sole practitioner to an advanced degree, and noted that both enhance a professional's earning capacity. *See id.* at 776. Finally, the court noted that requiring the husband to divide the value of his reputation with his wife would be an inequitable form of "double counting" because the wife would also recover from the husband's future income in the form of alimony. *See id.; see also Stevens v. Stevens*, 754 P.2d 952, 956 (Utah Ct.App.1988) ("There can be no good will in a business that is dependent for its existence upon the individual who conducts the enterprise and would vanish were the individual to die, retire or quit work."); *cf. Dunn*, 802 P.2d at 1318 (determining that business "founded and operated through the joint efforts and joint sacrifices of the parties" during marriage should be equally divided on remand, and that value of the business should not include any goodwill).

¶ 43 The primary difference between this case and *Sorensen* is that here Wife was not awarded alimony. Thus, the "double

counting" rational is not applicable. *See Sorensen*, 839 P.2d at 775–76. Even in the absence of an alimony award, however, the trial court must determine the value of each asset that is part of the property settlement. *See Stevens*, 754 P.2d at 955 (remanding for further findings on value of marital property). Here, the trial court considered expert testimony on behalf of each party as to the proper value of Stoney Motors. It also heard testimony from witnesses engaged in the automobile industry concerning the issue of whether Stoney Motors enjoyed any reputation in that field independent of Husband. The trial court found that Wife's expert valued the dealership at $200,000 while Husband's expert valued it at $100,000.[18] The court then explained why it rejected Wife's attempt to include an amount attributable to goodwill in the valuation of Stoney Motors. Specifically, the trial court found that "the good will of Stoney Motors is solely attributable to [Husband's] personal, professional reputation." *See Sorensen*, 839 P.2d at 776 (holding that "[t]he reputation of a sole practitioner is personal, as is a professional degree"); *Gardner v. Gardner*, 748 P.2d 1076, 1079–80 (Utah 1988) (distinguishing goodwill of a twenty-three member professional practice from that of a sole practitioner); *Stevens*, 754 P.2d at 956–57 (affirming trial court's refusal to calculate the value of husband's hay hauling business to include an amount attributable to goodwill). Finally, the trial court noted that there was no testimony to the effect that Husband intended to retire or sell the business to a third party. *See Sorensen*, 839 P.2d at 776 ("We believe, however, that unless the professional retires and his practice is sold, his reputation should not be treated differently from a professional degree or an advanced degree: both simply enhance the earning ability of the holder."). Consequently, the trial court concluded that the value of Stoney Motors did not include any amount for goodwill.

¶ 44 We defer to the trial court in its findings of fact related to property valua-

---

**18.** Husband objected to the finding as to the value attributed to him and we agree that Husband's expert was never asked and never offered an opinion as to the dollar value of Stoney Motors. Rather, Wife's expert testified that Husband's expert had admitted the company was worth $100,000. Husband's expert denied that she had calculated the net value, including Stoney Motors' debts, as $100,000.

tion and distribution. *See Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App.1991) ("Findings of fact in divorce appeals are subject to the clearly erroneous standard of review such that due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." (internal quotation marks omitted)). Under the facts as found by the trial court, Stoney Motors is the product of Husband's reputation, goodwill, and sole efforts. We agree that its value should be determined independent of any goodwill component.[19] "There can be no good will in a business that is dependent for its existence upon the individual who conducts the enterprise and would vanish were the individual to die, retire or quit work." *Stevens,* 754 P.2d at 956 (citing *Jackson v. Caldwell,* 18 Utah 2d 81, 415 P.2d 667, 670 (1966)). Although we agree with the trial court's decision to exclude goodwill from the calculation of Stoney Motor's value, we cannot tell from this record what dollar value, if any, it ultimately assigned to the business.[20] Consequently, we are unable to assess whether the overall property distribution is fair and must remand for further findings on this issue.

## G. The Manzel Loan

¶ 45 Wife's cross-appeal also challenges the trial court's ruling that she is obligated to pay the Manzel Loan. The trial court ruled that "[a]ny debts incurred during the marriage and before separation will be divided equally, regardless of who took out the debt or loan." Wife claims that because the Manzel Loan was incurred during the marriage,

the court should have divided the debt equally between the parties. We disagree.

¶ 46 Under Utah Code section 30–2–5, "[n]either spouse is personally liable for the separate debts, obligations, or liabilities of the other ... contracted or incurred during marriage." Utah Code Ann. § 30–2–5(1)(b) (2007); *see also Sentry Investigations, Inc. v. Davis,* 841 P.2d 732, 735 (Utah Ct.App.1992) (discussing separate debts incurred during marriage). Moreover, "[i]n a divorce action, there is no fixed formula upon which to determine a division of debts. However, such allocation must be based upon adequate factual findings which ruling we will not disturb absent an abuse of discretion." *Rehn v. Rehn,* 1999 UT App 41, ¶ 19, 974 P.2d 306 (citation omitted).

¶ 47 Here, the trial court specifically determined that the Manzel Loan was a separate debt of Wife. During the September 21, 2005 Clarification Hearing, the trial court heard extensive arguments from each party on whether the Manzel Loan should be considered a marital debt. The court ruled that "this money was given to [Wife] to pay off her gambling debt. I don't think it was a marital debt. It wasn't for [Husband's] benefit, it was for [Wife's]." The court further noted: "I thought it was fairly clear that the reason [Wife's] dad gave her this money was to bail her out for all her gambling debts." Thus, the trial court found that the Manzel Loan, although incurred during the marriage, was not a marital debt. Because the findings are adequate on this point and Wife has failed to show that the trial court exceeded its discretion, *see id.,* we approve the

19.. We find support for our holding in *In re Marriage of Talty,* 166 Ill.2d 232, 209 Ill.Dec. 790, 652 N.E.2d 330 (1995), where the Supreme Court of Illinois held that the personal goodwill of the owner of a car dealership should be treated like the goodwill of the owner of a professional practice. *See id.* at 334 (stating that "although the present case does not involve a professional practice, the same concerns ... are present here"). One of the issues raised on appeal in *Talty* was the valuation of a car dealership that the husband had acquired during the marriage. *See id.* at 331–32. Husband claimed that the trial court improperly considered his goodwill when valuing the car dealership, and that such valuation "resulted in an impermissible double counting of [the dealership's] value" and, thus,

an overstatement of the value of the property assigned to the husband. *See id.* at 332. The Supreme Court of Illinois agreed, and remanded the case to the trial court for a determination of the extent to which the car dealership's value was attributable to the husband's personal goodwill. *Id.* at 334.

20. At the Clarification Hearing, the trial court adopted the recommendation of Husband's counsel that "the value of [Stoney Motors] was limited to the net value of its inventory and to the residual value at the least." However, we can find no place in the record where the value of the Stoney Motor's inventory and residual value is stated.

court's ruling that the Manzel Loan is Wife's separate debt.

## II. Attorney Fees

¶ 48 Husband contests the trial court's award of attorney fees to Wife. Specifically, Husband claims that the trial court did not make sufficient findings of fact and instead awarded attorney fees to Wife because "the trial court perceived [Husband] to be intransigent in requesting that [Wife] receive none of the property."

¶ 49 Utah Code section 30-3-3 provides that in a divorce proceeding, a "[trial] court may order a party to pay the costs, attorney fees, and witness fees, including expert witness fees, of the other party to enable the other party to prosecute or defend the action." Utah Code Ann. § 30-3-3(1) (2007). We have previously held that:

> Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion. Significantly, the award [or denial of such fees] must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees. And, [f]ailure to consider these factors is grounds for reversal on the fee issue.

*Oliekan v. Oliekan*, 2006 UT App 405, ¶ 30, 147 P.3d 464 (alterations in original) (citations and internal quotation marks omitted).

¶ 50 We agree with Husband that the trial court did not make sufficiently detailed written findings of fact regarding attorney fees. The portion of the trial court's findings of fact that addresses attorney fees makes no mention of Wife's financial need or Husband's ability to pay attorney fees. Nor does the court address the reasonableness of Wife's attorney fees. However, the trial court did address the parties' annual income and monthly expenses in the section of the findings of fact discussing alimony. Specifically, the court found that Wife earns $4000 a month and that her monthly expenses amount to $7125. The court also found that Husband's monthly income is approximately $10,000 per month and that his expenses are $7311 per month.

¶ 51 In addition, the trial court commented on attorney fees during the Clarification Hearing, stating: "It seems to me that [Wife] clearly, from this case has the need for attorney[ ] fees and [Husband] has the ability to pay. I'm also finding—I think the attorney[ ] fees were reasonable." Although these conclusions appear to be unsupported by the requisite factual findings, there are facts in other sections of the findings and conclusions that could support the award. During remand, we instruct the trial court to enter express factual findings related to the award of attorney fees that include findings on "the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Id.* (internal quotation marks omitted). If those findings support the award of attorney fees, we will not interfere with the trial court's decision regardless of the court's additional concern with the "unreasonable, untenable[,] and totally unrealistic" attitude of Husband.

¶ 52 Finally, Wife asks this court to award her attorney fees on appeal. " 'Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal.' " *Osguthorpe v. Osguthorpe*, 872 P.2d 1057, 1059 (Utah Ct.App.1994) (quoting *Lyngle v. Lyngle*, 831 P.2d 1027, 1031 (Utah Ct.App.1992)). Because we are unable fully to perform our appellate function due to inadequate findings and conclusions prepared by the parties, we conclude that neither party has substantially prevailed on appeal. As such, we deny Wife's request for attorney fees.

## CONCLUSION

¶ 53 The trial court's oral and written findings of fact were insufficient to afford this court an opportunity for meaningful review of its rulings. Therefore, we remand for the entry of further findings that identify the items of property as either marital or separate, assign values to each item of property, indicate the ratio by which the marital property should be divided and the reasons why, award the property according to that distribution strategy, and enter express findings

as to the award of attorney fees. Although we have provided guidance to the trial court on a number of issues likely to reoccur on remand, we do not mean to limit the trial court's ability to revise its property division based on its analysis of the character and value of the property and the unique circumstances of this case. Each party shall bear his or her own costs and fees on appeal.

¶ 54 Affirmed in part, reversed in part, and remanded.

¶ 55 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.